United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-4286

_____

Dean G. Vetter,              *
                                         *

    Plaintiff/Appellee,       *
                                         *     Appeal from the United States

         v.               *     District Court for the Northern
                                       *     District of Iowa.

Farmland Industries, Inc.,    *
                                       *

    Defendant/Appellant.     *

_____

Submitted:  June 9, 1997
Filed:  July 16, 1997

_____

Before MURPHY and HEANEY, Circuit Judges, and BOGUE,[1] District Judge.

_____

MURPHY, Circuit Judge.

Dean Vetter sued his employer, Farmland Industries, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., for terminating him for refusing to move to his trade territory.  Vetter contended that his religious beliefs required him to live in a city with an active Jewish community and synagogue and that Farmland had discriminated against him on the basis of his religion by enforcing its residence requirement and not reasonably accommodating his beliefs.  A jury returned a verdict

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

in Farmland's favor, but the district court granted Vetter's motion for judgment as a matter of law. Farmland appeals, and we reverse.

Farmland sells livestock feed to farm cooperatives through a program in which it hires and trains a livestock production specialist to work closely with a co-op to sell feed to local farmers. Farmland reached an agreement with United Co-op in Webster City, Iowa to participate in the program. Under the agreement the livestock production specialist working with United was to be an employee of Farmland, but United was to pay a significant portion of the person's salary. United wanted Farmland to assign someone to the job who was knowledgeable about the business, who could communicate effectively with customers, and who would live in the Webster City area so he or she would develop strong relationships with local farmers.

Farmland did not have a livestock production specialist to assign to United so it sought to hire one for the position. Farmland was impressed with Vetter's experience and scheduled an employment interview with him. According to the testimony of Farmland employees, Vetter was told during the interview that the job would require him to live in the Webster City area and Vetter expressed a willingness to move there. Vetter testified on the other hand that he was told that he had to relocate, but not that he had to move to any particular place. After the interview but before he began working for Farmland, Vetter asked his prospective supervisor, George Gleckler, whether he could live in Ames, which is about forty miles from Webster City. Gleckler discussed this proposal with United Co-op, but United reiterated its need to have the specialist live in the Webster City area. Glecker then told Vetter that Ames was too far from Webster City.

Farmland offered Vetter the job, and there was testimony at trial that just before the employment papers were completed, Farmland again told Vetter that he had to live in the Webster City area and that Vetter understood this requirement. Vetter testified that he knew that Farmland wanted him to move to the Webster City area but that he

personally had not been told directly that this was company policy.[2] Vetter accepted the job and moved to a room in Webster City. His family remained in Muscatine, which is over 200 miles from Webster City. During the first month of his employment, he searched for a home in the Webster City area but did not find rental housing satisfactory to him. Gleckler inquired about his house search, and Vetter said that his wife was working on it.

Shortly after this conversation Gleckler discovered from Farmland's relocation office that the Vetters had made arrangements to live in Ames. Farmland had indicated that it was prepared to reimburse his moving expenses from Muscatine to the Webster City area, but had said Ames was not acceptable. Gleckler discussed the matter with Vetter and then called Mrs. Vetter. Gleckler told her that he was upset that Vetter had not been forthright about his moving plans. Mrs. Vetter responded that it was important that the family live in an active Jewish community with a synagogue and that they wanted their children to participate in programs at the synagogue. Gleckler replied that "sometimes you have to choose between your religion and your job."

Gleckler discussed Vetter's plan to move to Ames with one of his supervisors and United's management. Farmland decided that Vetter should be dismissed because he had refused to live in the Webster City area and had begun to make arrangements to move to Ames at company expense in spite of its policy. Vetter was terminated, and he returned to Muscatine where he had lived for two years before his employment with Farmland and from which he commuted 45 miles to a synagogue in Rock Island.

---

[2]Vetter testified that Farmland had told his wife before he took the job that company policy required him to live in the Webster City area and that his wife had informed him about it the same day, but that Farmland did not tell him directly about the policy before he started work.

Vetter sued Farmland, claiming that he had been discriminated against on the basis of his religion in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) & (j), in that Farmland did not reasonably accommodate his religious beliefs.[3]  In order to prove this allegation Vetter had the burden to demonstrate that "(1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he has informed his employer about the conflict; and (3) he was discharged because of his refusal to comply with the employment requirement."  Johnson v. Angelica Unif. Group, Inc., 762 F.2d 671, 673 (8th Cir. 1985) (quoting Brown v. General Motors Corp., 601 F.2d 956, 959 (8th Cir. 1979)).  An employer need not accommodate a "purely personal preference," however.  Brown, 601 F.2d at 960.

At trial both parties agreed to a jury instruction explaining that Vetter must prove that

> [he] held a sincere belief that compliance with an employment requirement was in conflict with an observance or practice of his religion, [he] does not need to prove that his belief is a tenet of his religious nor that a particular religious observance or practice is required by the tenets of his religion.  However, purely personal preferences do not need to be accommodated. . . .  [but that he] was discharged for failing to comply with the conflicting employment requirement.

---

[3]Section 703 of Title VII, 42 U.S.C. 2000e-2(a)(1), makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."

Section 701(j), 42 U.S.C. 2000e(j), defines religion as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

The jury returned a general verdict in Farmland's favor. The district court then granted Vetter's motion for judgment as a matter of law. It recognized the jury's determination but concluded that "all of the evidence offered at trial points instead to the sincerity of Vetter's belief rather than to a purely personal preference."

Farmland argues the district court erred by overturning the jury verdict. It believes a desire to live near others of the same religion is not an observance or practice that must be accommodated under Title VII. Even if this were a requirement of his faith, however, it was necessary for Farmland to have the specialist live in the co-op trade area because of its agreement with United Co-op. It therefore could not reasonably accommodate his desire. Farmland also contends the jury could have found, on the evidence and under the court's instructions, that Vetter's decision to live in Ames was motivated by factors other than his religion or that he had been terminated for attempting to obtain reimbursement for his move to Ames rather than for choosing to live there.

Vetter argues the evidence in support of his prima facie case of discrimination under Title VII was largely undisputed. He contends that he established as a matter of law that he had a sincere religious belief that he must live in an active Jewish community to practice his religion fully, that he told Farmland of that belief, and that he was fired because he did not comply with Farmland's demand to relocate to the Webster City area. Farmland, he contends, did not meet its burden to show that its refusal to accommodate his religious beliefs would cause undue hardship to the company.

The grant of a motion for judgment as a matter of law is reviewed de novo. Such a motion should be granted "when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." Ehrhardt v. Penn Mut. Life Ins. Co., 21 F.3d 266, 269 (8th Cir. 1994) (citations and internal quotation marks omitted). A jury verdict is to be overturned "[o]nly when there is a

complete absence of probative facts to support the conclusion reached." Ryther v. KARE 11, 108 F.3d 832, 845 (8th Cir.) (en banc) (quoting Lavender v. Kurn, 327 U.S. 645, 653 (1946)), cert. denied, 65 U.S.L.W. 3694 (1997); see also McAnally v. Gildersleeve, 16 F.3d 1493, 1496 (8th Cir. 1994). The evidence and all reasonable inferences from the evidence must be evaluated in the light most favorable to party that prevailed with the jury. Stephens v. Crown Equip. Corp., 22 F.3d 832, 834 (8th Cir. 1994). We must assume that all conflicts in the evidence were resolved in the favor of the party that prevailed with the jury and "assume as proved all facts that the prevailing party's evidence tended to prove." TEC Floor Corp. v. Wal-Mart Stores, Inc., 4 F.3d 599, 601 (8th Cir. 1993) (citations and internal quotation marks omitted).

Under the jury instructions Vetter had to show that he had a sincere belief that compliance with Farmland's residence requirement conflicted with his religious observance or practice and that his decision to live in Ames did not reflect a purely personal preference. The evidence was in conflict on this point, and it was for the jury to resolve the conflict. There was evidence that Vetter chose to live in Ames as a matter of personal preference, not because living in the Webster City area would have conflicted with an observance or practice of his religion. Farmland employees testified that Vetter had agreed during his interview that he would live in Webster City even though he did not know whether there was an active Jewish community or synagogue there. There was also testimony that he understood before the employment arrangement was final that living in the Webster City area was required. Vetter testified that he had looked for a home in Webster City, but that he was unsuccessful because it was a difficult place to find rental housing. Vetter acknowledged that he wanted to live in Ames in part because he had found suitable housing there and the schools had a good reputation. At the time Vetter accepted the job he lived in Muscatine which did not have a synagogue and from where he commuted 45 miles to religious services, and he returned to Muscatine after he was discharged. Had he moved to Webster City, he would have been approximately the same distance from a

synagogue as he was in Muscatine.  This evidence, and the reasonable inferences that could be drawn from it, was sufficient to support the jury verdict in Farmland's favor.

The jury had the duty to determine whether Farmland's residence requirement interfered with the observance or practice of Vetter's religion or whether he chose to live elsewhere because of a purely personal preference.  There was conflicting evidence on this issue, and since a reasonable jury could have found in Farmland's favor as this one did, the district court erred by overturning the verdict.  See McAnally, 16 F.3d at 1496.[4]

Accordingly, the judgment is reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]In light of this conclusion it is not necessary to reach the other issues discussed by the parties.