**Louis COSME, Plaintiff–Appellant,**

**v.**

**William J. HENDERSON, in his capacity as United States Postmaster General, Defendant–Appellee.**

**Docket No. 01–6032.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 24, 2001.

Decided March 29, 2002.

Louis Cosme, Bronx, New York, on submission, as pro se Plaintiff–Appellant.

Neil S. Binder, Assistant United States Attorney, New York, NY; Mary Jo White, United States Attorney, Jeffrey Oestericher, Assistant United States Attorney for the Southern District of New York, New York, NY, of counsel, on submission, for Defendant–Appellee.

Before CARDAMONE, McLAUGHLIN, and F.I. PARKER, Circuit Judges.

CARDAMONE, Circuit Judge.

Obedience to the biblical injunction contained in the 4th Commandment "Remember to Keep Holy the Sabbath Day," and on it to do no work, directly conflicts, on this appeal, with appellant's work schedule at his employment requiring us to determine whether his employer's accommodation of appellant's religious practices passes statutory muster.

Plaintiff Louis Cosme (plaintiff or appellant) was employed by the defendant United States Postal Service (defendant or appellee) for many years as a letter carrier at the Lincolnton station in upper Manhattan. Prior to the events that are the subject of this litigation, Cosme became affiliated with the Worldwide Church of God, which holds as a condition of church membership that its members observe the Sabbath, by refraining from work on the seventh day of the week that runs from Friday sunset to Saturday sunset. Thus, on 12 different Saturdays running from December 1992 to March 1993, appellant did not report for work at the Lincolnton station. That failure on his part spawned the present litigation in which we must decide whether the Postal Service's attempts to adjust Cosme's work schedule in light of his religious beliefs discharged the obligation Congress imposed on employers

under § 701(j) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j) (1994). Section 701(j) directs employers to "reasonably accommodate" an employee's religious practices, so long as that accommodation does not cause "undue hardship on the conduct of the employer's business." Believing such obligation was fully discharged by the Postal Service, we affirm.

## FACTS

### A. *Saturdays Off*

In 1992 plaintiff worked as a letter carrier driving a postal truck and delivered parcel post in those areas of upper Manhattan served by the Lincolnton station. Cosme worked a fixed Monday to Friday schedule. In mid–1992 the Lincolnton parcel post operation was relocated and, as a result, only one of six parcel post delivery trucks remained in operation.

Stanley Becton, the postal worker previously assigned to the remaining parcel post truck, had a work schedule with fixed days off on Saturday and Sunday. At the time of the parcel post relocation, Becton resigned, thereby opening his position to bidding by other Lincolnton employees. But when the route was posted for bidding by the Lincolnton station manager, Michele McNeill, the only fixed day off was now Sunday, with Saturday off rotating weekly among the other postal drivers. Cosme insists that changing the days off guaranteed a conflict between his job and his religious beliefs and that McNeill changed the schedule to discriminate against him. McNeill explains, in response, that the change in the work schedule was required under the parcel post reorganization because otherwise overtime hours would be required to cover Lincolnton's parcel delivery demand and other drivers would have no opportunity to have a rotating Saturday rest day.

Even though the route no longer had a fixed Saturday off, Cosme decided to bid on the position, which he was sure to obtain with his accumulated seniority. When notified of Cosme's intentions, McNeill allegedly informed him that he would be required to work Saturdays if he bid successfully and urged him to instead remain an "unassigned regular," which would allow her to accommodate his scheduling needs. Importantly, McNeill also allegedly advised Cosme that as an unassigned regular, he could bid on vacancies at other postal stations in Manhattan that did not require Saturday work. Dissatisfied with McNeill's offer, Cosme bid on the Lincolnton route.

After plaintiff was awarded the position, he refused to work on Saturdays, simply failing to report for work. For this failure, Cosme was progressively disciplined, being first issued three letters of warning, and culminating finally in a "Notice of Proposed Removal" in April 1993. After receiving that notice, plaintiff entered into an arrangement with the Postal Service under which he worked four days at Lincolnton, had Saturday as a rest day, and worked Sundays at another station. Based on this agreement, the Postal Service terminated the proposed removal proceedings against him. With the Saturdays off issue resolved, Cosme turned his attention to a new position.

In addition to her attempt to accommodate Cosme with an "unassigned regular" position, McNeill testified that she made three offers to plaintiff to transfer him to other postal stations within Manhattan where he could work as a letter carrier with a fixed Saturday off. Specifically, McNeill said she offered to transfer him to the Washington Bridge, Manhattanville, and Church Street stations. Allegedly, McNeill spoke with the managers for these postal stations and obtained their agree-

ment to take plaintiff with a schedule that afforded him Saturdays off. Although Cosme suggests that some or all of these offers were not made, the district court found that a preponderance of the evidence supported McNeill's account. In any case, plaintiff argues that these transfer offers were inadequate because he would suffer a loss of seniority for a 90–day period following any such transfer. At the expiration of 90 days, however, he would regain his seniority and be able to bid on any open position.

### B. Postal Inspector Position

In 1994 Cosme applied for a position as a postal inspector, a highly competitive law enforcement position. Plaintiff's application was assigned to Postal Inspector David Rivera for evaluation. After interviewing Cosme, Rivera visited Lincolnton to review plaintiff's employment records and to speak with Supervisor McNeill. Rivera learned that plaintiff had been censured for violating Postal Service driving policies: once for leaving the scene of and failing to report an accident and another for making an illegal U-turn. According to Rivera, these infractions were sufficiently serious to preclude him from recommending Cosme for a postal inspector position. Rivera also learned from McNeill that Cosme had failed to report for work on numerous Saturdays on account of his religion. Rivera recommended against hiring Cosme for a postal inspector position, and he was not hired.

### PRIOR LEGAL PROCEEDINGS

After receiving a right to sue letter from the Equal Employment Opportunity Commission (EEOC) on February 27, 1998, plaintiff commenced this action on April 17, 1998 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1994 & Supp. V 1999), alleging he was unlawfully discriminated against because of his religion when he was denied reasonable accommodation for his Sabbath observance on Saturdays. Plaintiff further asserted that he was denied a promotion to postal inspector as a result of the same failure to accommodate him. Defendant Postal Service filed an answer denying plaintiff's claims.

On July 10, 2000 a bench trial was held in the United States District Court for the Southern District of New York before Judge Victor Marrero. Plaintiff called four witnesses: Stanley Becton, Michele McNeill, John Frink (the Postal Service manager for uptown Manhattan that included Lincolnton station), and Ronald Jackson (the shop steward at Lincolnton during the relevant time period). Defendant called two witnesses: Stephen Yamond (the Postal Service's manager, labor relations, New York district) and David Rivera. The testimony of these witnesses are reflected in the statement of facts just recited. Plaintiff did not testify.

In its analysis of plaintiff's claims, the district court first addressed Cosme's argument that the proposed transfers to other stations would not have accommodated his religious needs because the station managers where he would have been transferred were not obligated to give him Saturdays off under the applicable collective bargaining agreement (CBA). In rejecting this argument, the district court noted that while the managers may not have been contractually obligated to adjust Cosme's schedule, the CBA did not prevent them from doing so either. Since the evidence established that the station managers had agreed to give Cosme the time off, the court concluded that the CBA was irrelevant.

Having found that McNeill offered to accommodate plaintiff and that the CBA did not prevent the Postal Service from

implementing McNeill's proposals, the district court next analyzed whether the options provided to Cosme were "reasonable." While plaintiff strongly objected to the 90–day loss of seniority he would suffer under the accommodations, the trial court nonetheless found this burden to be insufficient to undermine the reasonableness of the Postal Service's "good faith attempts" to accommodate his religious practices. Since the loss of seniority was the only potentially significant problem with the employer's accommodations, the district court held that McNeill's offers fulfilled the Postal Service's statutory obligations under Title VII.

In light of this holding, Cosme was not entitled, under the court's analysis, to simply fail to report for work on days required by the schedule he chose. As such, any disciplinary action that arose from plaintiff's attempts at self-help was justified and non-discriminatory. If, on the other hand, the Postal Service had disciplined plaintiff for failing to work on a Saturday *after* he accepted an offer of accommodation, then—the district court conceded—the resolution of this issue would have been more problematic. Significantly, Cosme's claim that he was impermissibly denied a promotion to postal inspector relied entirely upon a finding that his disciplinary record, which factored into the denial, was marred by discrimination. Without such a finding, the district court ruled there was nothing to support Cosme's charge that the Postal Service's failure to promote him constituted a discriminatory employment action. As a result, judgment was entered for the Postal Service on November 15, 2000, and Cosme timely appealed on January 10, 2001.

## DISCUSSION

On appeal, Cosme contends the district court erred (1) in finding the Postal Ser-vice offered him an accommodation for his religious needs, (2) in ruling that the alleged accommodations were reasonable, given that he would lose 90 days of seniority, (3) in ruling that the provisions of the collective bargaining agreement are immaterial in determining an employer's obligation under Title VII, and (4) in crediting McNeill's testimony that she would need to pay premium wages if Cosme were given Saturdays off in the position he bid upon.

### A. Accommodation Under § 701(j) of Title VII

Section 703(a)(1) of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e–2(a)(1) (1994), makes it an unlawful employment practice for an employer to discriminate against an employee on account of his or her religion. The broad aim of Title VII is to eliminate discrimination in employment, that is, employees who are similarly situated are not to be treated differently simply because they differ from one another with regard to their religious beliefs or practices. More specifically, Title VII's provisions make it an unlawful employment practice to discriminate against any employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion," *id.*, or to "limit, segregate or classify" an employee in a way that would "adversely affect his status as an employee," because of that employee's "religion." 42 U.S.C. § 2000e–2(a)(2), § 703(a)(2).

Congress delineated the scope of an employer's duties under the above provision by defining "religion" in a substantively significant way

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or pro-

spective employee's religious observance or practice without undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j), § 701(j).

 Thus, according to this definition, when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship. *Cf. Knight v. Conn. Dep't of Pub. Health,* 275 F.3d 156, 167 (2d Cir.2001) (noting that employees, to make out a *prima facie* case of religious discrimination, must show that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement"). In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment. *See Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) (citing 118 Cong. Rec. 706 (1972)). Nevertheless, to avoid Title VII liability, the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends. *Id.*

### B. *Postal Service's Alleged Offers of Accommodation*

 Since it is undisputed that Cosme had a genuine religious belief that conflicted with an employment requirement and that the Postal Service knew about it, the issues on appeal primarily revolve around the Postal Service's alleged offers of accommodation and the propriety of the disciplinary record appellant accumulated for failing to avail himself of them. To begin,

Cosme asserts the district court erred by finding that McNeill made offers of accommodation prior to the time that he started skipping Saturdays, which was conduct that resulted in his receipt of a proposed notice of termination. Of course, if the offers were not timely made, then questions as to whether they were "reasonable" would become secondary and possibly irrelevant. In addition, according to the appellant's argument, the Postal Service's alleged failure to offer any form of accommodation would have unfairly forced Cosme to choose between his job and his religious practices. This unfair choice, he declares, would insulate his decision to engage in self-help from any sanction by his employer.

To buttress his version of the facts, Cosme argues that we should not credit McNeill's testimony as to the timing of the offers as it was "untruthful" and "evasive." In particular, he contends McNeill could not have made the offers when she said she did—allegedly between October 16 and 29, 1992—because appellant "was on leave and not present for much of this time."

 In reviewing a district court's findings of fact, we apply the "clear error" test as set forth by Rule 52(a) of the Federal Rules of Civil Procedure. *See Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 208 (2d Cir.1990). To reverse, our review must leave us with a "definite and firm conviction that a mistake has been committed." *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954). The plaintiff's burden on appeal is a heavy one because a trial court's credibility determination is entitled to considerable deference. When that court makes a choice between two permissible views of the proof, we will not second guess the trial court so long as its view of the evidence is plausible in light of the entire record. *AB-*

*KCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 978 (2d Cir.1991).

Given this deferential standard of review, we are unable to conclude that appellant has demonstrated the district court's findings of fact were implausible. While Cosme asserts he was on leave for much of the relevant time prior to the disciplinary proceedings against him, as a practical matter this has no bearing on the issue before us. Even accepting Cosme's delineation of the time frame and his representations as to his absence, McNeill still could have presented her oral accommodation offers during the times that appellant was in fact at work. Hence, plaintiff's argument is reduced to his allegation that McNeill was not a credible witness, a proposition for which he has no proof that would cause us to substitute our judgment for the trial court's more informed opinion on the subject. Accordingly, we conclude that McNeill made all of her offers of accommodation in a timely manner.

## C. *The Reasonableness of the Accommodations*

In the alternative, appellant insists that even if McNeill offered him timely accommodations, it still would have been insufficient to fulfill the Postal Service's statutory obligations because the proposed accommodations were not reasonable. Importantly, this argument must be interpreted as setting forth background for the claim of discrimination in the Postal Service's failure to promote the plaintiff to the position of postal inspector. This is because Cosme and McNeill's supervisor, John Frink, worked out an accommodation that terminated the disciplinary proceedings, satisfied Cosme's scheduling needs, and prevented Cosme from even temporarily losing his seniority. As a result of this arrangement, plaintiff cannot assert that he was

not accommodated, only that the timing of the accommodation precipitated a different discriminatory action, namely the Postal Service's promotion decision. Given this view of Cosme's argument, it faces several hurdles: he must establish that McNeill's proposed accommodations were not reasonable; he must show that an employee faced with unreasonable accommodation offers is entitled to engage in self-help; and, he must demonstrate that the disciplinary record he received for engaging in self-help impermissibly affected the Postal Service's decision not to promote him. After reviewing the record, we believe appellant's argument fails on the first step—Cosme was given several reasonable offers of accommodation.

As noted, McNeill offered Cosme at least four different offers of accommodation. First, she told him that if he remained an "unassigned regular," she would not schedule him for Saturdays. Second, she made arrangements with at least three other postal stations that would have accepted Cosme as a transfer and given him Saturdays off, although he would have temporarily lost his seniority after transferring to another station. For any of these offers to have been reasonable within the meaning of § 701(j), the proposed accommodation had to have eliminated the conflict between the employment requirement, working on Saturdays, and the employee's religious practice of not working on the Saturday Sabbath. *See Ansonia*, 479 U.S. at 70, 107 S.Ct. 367. Further, as discussed, the Postal Service was not required to give Cosme a choice between them—if any one of the offers could have reasonably accommodated plaintiff's needs, the § 701(j) inquiry is satisfied.

1. *Unassigned Regular Position.* The first offer of accommodation, allowing Cosme to remain an unassigned regular, clearly eliminated the conflict be-

tween Cosme's religious beliefs and his employment requirements. Nevertheless, the offer might still have been unreasonable if it caused Cosme to suffer an inexplicable diminution in his employee status or benefits. *Cf. id.* at 70–71, 107 S.Ct. 367 (requiring employee to take unpaid leave for religious observance generally is reasonable because it has "no direct effect upon either employment opportunities or job status"). In other words, an accommodation might be unreasonable if it imposes a significant work-related burden on the employee without justification, such as the neutral operation of a seniority system. Cosme has not proved that he would suffer any prejudice if he remained an unassigned regular at Lincolnton. To the contrary, the district court found that if plaintiff accepted the position, he would only be assigned tasks appropriate for a letter carrier, with his pay rate remaining the same. Cosme would, of course, suffer no loss of seniority, not even for 90 days, as an unassigned regular. In sum, since Cosme would have obtained the benefit he sought, Saturdays off, and would have suffered no discernible loss, there is no basis to conclude that this accommodation was unreasonable.

■ *2. Offers to Transfer.* McNeill's transfer offers also constituted reasonable accommodations to Cosme's religious practices. Although Cosme must admit that the new positions would have eliminated the conflict with his need for Saturdays off, he asserts that the cost he would suffer, a 90-day period where he would be without seniority, rendered the offers "unreasonable." To support this position appellant avers that seniority is one of the most significant and valuable privileges that one accumulates as a letter carrier. Unfortunately, other than this very broad statement, there was little else in the record to evaluate how significant the loss of seniority would be for him and, of equal consequence, what the legal relevance of the loss would be. The evidentiary omission is significant given that the managers of the stations to which Cosme could have transferred had promised him a schedule that would accommodate his religious needs, which is presumably what Cosme would have used seniority to obtain.

■ Nonetheless, by liberally construing Cosme's *pro se* brief, we believe appellant's allegations form the basis of two related arguments, neither of which is ultimately successful. First, plaintiff's allegations of discrimination could be viewed as a challenge to the seniority system itself, that is, Cosme is alleging that it somehow operated to the disadvantage of religious minorities, such as those who strictly observe a Saturday Sabbath. If it was appellant's intent to make this argument, then the evidentiary burden he would face, given the evidence in the record, would be insurmountable. It is well established that the neutral operation of a *bona fide* seniority system, even if it has "some discriminatory consequences," does not violate the proscription against religious discrimination in employment. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 82, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977); *see also* 42 U.S.C. § 2000e–2(h), § 703(h) ("[I]t shall not be an unlawful employment practice ... to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system."). Cosme would need to prove therefore that the seniority system is not *bona fide,* such as by showing that it was created to discriminate against religious minorities. 432 U.S. at 81–82, 97 S.Ct. 2264. Since there is no evidence to suggest this was the case at the Postal Service, this argument is without merit.

Second, appellant might be claiming that while the seniority system was in-

tended to be operated in a neutral way, it has been applied to him in a discriminatory fashion. We assume this is the purpose of the final argument in the *pro se* brief, which intimates that McNeill changed the Lincolnton schedule to force Cosme to either suffer a seniority loss or compromise his religious beliefs. In her testimony, McNeill claimed that if she had kept the schedule the way it was before the reorganization, she would have had to pay overtime wages to make it work. Cosme disagrees and explains that the use of overtime would have been rare and, therefore, it would not have caused the Postal Service to suffer any "undue hardship." As a result, according to his argument, McNeill's behavior is better explained by discriminatory animus.

There are two problems with this proposition. First, the issue of undue hardship is irrelevant to a claim of religious discrimination when considering whether a proposed accommodation is reasonable. *See Ansonia,* 479 U.S. at 68–69, 107 S.Ct. 367 ("[T]he extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship."). Second, to the extent plaintiff challenges McNeill's credibility, we have already determined that the district court's finding in that regard may not be disturbed. As such, appellant has provided no basis from which we could infer that McNeill's actions were motivated by discriminatory animus. Thus, we cannot conclude that the operation of the seniority system, either in its design or application, rendered the transfer offers unreasonable.

Presumably recognizing the evidentiary omissions in his arguments, Cosme warrants that the proposed transfers to accommodate him were unreasonable because they would have violated the CBA between the Postal Service and the letter carriers union. Since, in the usual case, employers are not required to breach an agreed-upon seniority system to accommodate the religious needs of employees, appellant reasons that McNeill's offers would have been unenforceable. Even assuming plaintiff's characterization of the CBA is correct, this argument is without merit. Cosme draws legal support from cases in which employers were refusing to violate their collective bargaining agreements, not where they had agreed to make an exception. *See, e.g., Hardison,* 432 U.S. at 80, 97 S.Ct. 2264. Simply because employers are not *required* to breach a seniority agreement does not mean they cannot opt to do so in appropriate circumstances. Consequently, Cosme's argument reduces to a complaint that his employer was being more accommodating than Title VII requires, a novel theory of liability indeed.

### D. *Failure to Promote*

Given that McNeill's multiple offers of accommodation were reasonable, appellant was not entitled to skip work on Saturdays after bidding on a position he knew would require work on his Sabbath. Accordingly, plaintiff was properly disciplined for his behavior, making his record a permissible consideration in Rivera's decision not to promote plaintiff to the position of postal inspector. When combined with Cosme's other disciplinary infractions, including failing to report an accident and making an illegal traffic maneuver while on the job, there is no proof of discrimination in this employment decision.

### CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.