# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3423

ELVIRA M. JIMENEZ,

*Plaintiff-Appellant,*

*v.*

MADISON AREA TECHNICAL COLLEGE,
JACKYE THOMAS, CAROL BASSETT,
and WILLIAM STRYCKER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00-C-424—**Barbara B. Crabb**, *Chief Judge.*

ARGUED MAY 31, 2002—DECIDED FEBRUARY 28, 2003

Before HARLINGTON WOOD, JR., COFFEY, and ROVNER, *Circuit Judges.*

COFFEY, *Circuit Judge.* Plaintiff Elvira Jimenez ("Jimenez") filed an action against her former employer Madison Area Technical College (the "College") under 42 U.S.C. §§ 1981 and 1983, alleging that the College had discriminated against her on the basis of race, ethnic origin, and sex. After finding that Jimenez had relied on falsified documents to support her civil rights claims, the district court sanctioned Jimenez, under Rule 11(c) of the Federal Rules of Civil Procedure, and dismissed her suit

with prejudice.[1] Jimenez claims that imposition of such a harsh sanction amounts to an abuse of discretion. We affirm the district court's dismissal of Jimenez's Complaint.

*I.   Background*

Jimenez was hired by the College on September 26, 1989. While employed by the College, Jimenez worked in various administrative positions within the College's business lab, adult education department, and student services department. Jimenez claims that her troubles started in 1993, when she began to receive derogatory comments from and to be harassed by certain College administrators, all on account of her race (Hispanic).

In 1997, Jimenez took a leave of absence from her job and sometime thereafter filed a worker's compensation claim against the College. She alleged that certain College administrators had harassed her and caused her emotional distress. In support of these allegations, Jimenez produced a number of inflammatory letters and e-mails allegedly written by various colleagues and supervisors during the term of her employment. The communications contained derogatory references to Jimenez's race, *see*, *e.g.*, Def. Ex. 6, Oct. 31, 1995 E-mail (stating that Jimenez was "a stupid mexican after all. . . ."); and Def. Ex. 16, June 16, 1997 Letter ("I am almost ensured that your little spic ass was out the door at that time . . . whether we'd like to admit our preferences or racist conduct it happens and it's natural."), and described alleged instances of sexual harassment involving Jimenez, *see* Def. Ex. 24, July

---

[1]   The district court also imposed monetary sanctions on Jimenez's attorney, Willie Nunnery, in the amount of $16,473. Nunnery did not appeal from the court's imposition of such sanctions. Accordingly, the monetary sanctions are not at issue in this appeal. *See infra* note 3.

2, 1997 Letter (apologizing for taking "violent sexual actions against" Jimenez and for "slapping [her] buttocks, and massaging [her] shoulders . . . [and] grabb[ing] [her] breasts").

Having some doubts about the authenticity of the alleged discriminatory communications, the College spoke with the purported authors of the various writings. In sworn statements, each of the alleged authors denied having written the alleged communications attributed them. *See*, *e.g.*, Def. Ex. 3, Bassett Aff. ¶ 4 (stating that the Oct. 31, 1995 e-mail attributed to her by Jimenez was "a complete fabrication and forgery"); Def. Ex. 15, Simone Aff. ¶ 6 (calling the June 26, 1997 Letter she had purportedly written "nothing less than a complete fabrication and forgery"); Def. Ex. 25, Strycker Aff. ¶ (stating that the letter attributed to him was "a complete fabrication" and that Jimenez's allegations of sexual harassment were "untrue, baseless in fact and libelous").

After its investigation of the matter, on November 12, 1997, the College, through counsel, advised Jimenez's counsel, Willie J. Nunnery, that the alleged authors of the derogatory letters and e-mails had denied writing the communications attributed to them. The College requested that Nunnery produce the original documents for its review. Neither the attorney, nor his client, complied with the request. Upon the completion of the worker's compensation investigation, Jimenez's claim was denied. Jimenez never returned to work and her employment was subsequently terminated.

Despite having knowledge of the College's investigation into the fraudulent documents, Nunnery brought the instant lawsuit against the College on behalf of Jimenez,

pursuant to 42 U.S.C. §§ 1981 and 1983.[2] In the Complaint, Jimenez alleged that the College had infringed upon her equal protection rights by discriminating against her based on her sex, ethnic origin, and race. Jimenez subsequently amended her complaint to add as defendants her former colleagues Jackye Thomas, Carol Bassett and William Strycker (the same colleagues to whom she had previously attributed the alleged discriminatory communications). Defendant Thomas had been one of Jimenez's supervisors at the College, while Defendants Bassett and Strycker had been employed in the College's human resources department during Jimenez's tenure at the College.

Defendants moved to dismiss Jimenez's Amended Complaint, which the district court granted, ruling that Jimenez had failed to state a claim of discrimination. At the same time, the court gave Jimenez leave to file a second amended complaint.

In her Second Amended Complaint, Jimenez broadened her factual allegations to include claims that, on a number of occasions during Jimenez's tenure with the College, Defendants had sent her e-mails and letters containing racial slurs and blatantly discriminatory epithets. *See*, *e.g.*, Second Amended Complaint ¶ 24 ("Defendant Bassett wrote something to the effect [that] '. . . you are . . . giving yourself the reputation of being . . . a little dirty, money hungry spic.'"); *id.* ¶ 27 ("Bassett sent an e-mail . . . indicating '. . . I guess you are . . . a stupid Mexican. . . .'"); *id.* ¶ ("Defendant Thomas sent an e-mail to the effect, 'it was wrong for me to call you a loud-mouth power-monging [sic] spic and compare you to Fideel [sic] Castro's dictatorship style of leadership.'").

---

[2] Although Jimenez had previously filed a discrimination suit against the College in January 1998, she had voluntarily dismissed that suit after the College had filed a Motion to Dismiss.

Familiar with the false allegations contained in the alleged discriminatory e-mails and letters submitted in connection with Jimenez's failed worker's compensation suit, Defendants' counsel attempted to persuade Nunnery to withdraw the lawsuit on the basis that the documents underlying the allegations were less than authentic and fraudulent documents. Going further to achieve a fair disposition of the matter, on December 13, 2000, Defendants' counsel sent Nunnery a letter informing him that each of the Defendants unanimously denied authorship of the various e-mails and letters attributed to them by his client, Jimenez, and requested a dismissal of the suit. *See* Def. Ex. 1, Dec. 13, 2000 Letter. Jimenez and Nunnery did not agree to dismiss and continued to pursue the false and ridiculous action against Defendants.

The Defendants' attempts to deter the suit having failed, they sent Nunnery a proposed motion for sanctions on March 1, 2001, providing Nunnery and Jimenez with the 21-day notice required under Rule 11. Fed. R. Civ. P. 11(C)(1)(a). Thereafter, Defendants Thomas, Bassett and Strycker, as well as the College, filed their Motion for Rule 11 sanctions with the district court. The district court held an evidentiary hearing in the matter.

At the hearing, Jimenez repeatedly denied that the alleged communications were fraudulent and maintained that the named Defendants had, in fact, made the discriminatory statements contained in the writings. Nunnery also testified, informing the court that his "standing position" on issues of credibility was that "when there is a judgment call, [he] fall[s] on the side of my client." Tr. at 60. On such basis, he justified his refusal to dismiss the case, claiming that it was "not in the best interests of [his] client" to believe Defendants' affidavits disclaiming authorship of the documents. *Id.* He claimed that he was waiting until he conducted depositions to test the credibility of the various letters and e-mails produced by

Jimenez, as well as her related allegations of discrimination.

Defendants Bassett, Thomas and Strycker, testified at the hearing and emphatically denied having written the letter and e-mails that Jimenez had attributed to them. Defendants recounted that they had been "hurt" and "outraged" by the vile statements that had been wrongfully associated with them. Tr. at 88, 112.

Based on the testimony of the various witnesses and other evidence presented at the hearing, the court found that Jimenez and Nunnery had used and filed "obviously fraudulent documents" in support of the fictitious allegations of racial discrimination in the Second Amended Complaint. *Jimenez v. Madison Area Tech. College, et al.*, No. 00-C-424, at 14 (W.D. Wis. Aug. 13, 2001) [hereinafter *Jimenez I*]. The court's finding was clear, succinct, direct, and left no room for doubt that "[n]one of the individual defendants wrote the emails, memoranda or letters attributed to them by plaintiff." *Id.* at 10.

In support of its finding that the documents were fabricated, the court noted the suspicious nature of the statements contained in the various documents. For instance, the communications made repeated references to Jimenez's language deficiency, which the trial judge found to be "peculiar" in light of the fact that "she ha[d] no[ ] [language deficiency]." *Id.* at 13. Also, given the blatantly discriminatory nature of the alleged communications, the court remarked that "[i]t [wa]s unlikely that persons holding professional [positions] in human relations or in the union would make the statements attributed to them [and] even more unlikely that they would document their discriminatory statements in writing." *Id.* at 12-13.

The trial court concluded that, because Jimenez had presented "obviously fraudulent documents to support [her] allegations in [the] complaint," *id.* at 14, and, further-

more, because Nunnery himself had failed to perform a reasonable inquiry into the validity of the documents, both Jimenez and Nunnery shared responsibility for the fraudulent submissions. *Id.* Notably, the trial judge labeled Jimenez and Nunnery's actions "the most blatant example of a Rule 11 violation that [she had ever] seen." *Id*. The trial court sanctioned both Jimenez and her counsel for their respective violations of Rule 11 and dismissed Jimenez's suit, with prejudice. The court also ordered Nunnery to pay a sum of $16,473 to Defendants. Jimenez filed a timely appeal to this Court.[3]

## II.  Analysis

### A.  Review of Rule 11 Sanctions

Rule 11 requires that an attorney or party, certify to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that any pleading presented to the court is not presented for an improper purpose, that the claims therein have a legally sufficient basis, and that the allegations and other factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). One of the basic purposes of Rule 11 is to "deter baseless filings in the district court . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Under Rule 11(c), a district court may impose sanctions on a party or her counsel (or both), for failing to comply with Rule 11(b). Fed. R. Civ. P. 11(c);

---

[3] Nunnery failed to appeal from the district court's imposition of monetary sanctions against him. The instant appeal is thus limited to a review of the district court's sanction against Jimenez, *i.e.*, its entry of judgment dismissing her case with prejudice. *See Jimenez v. Madison Area Technical College, et al.*, No. 01-3423 (7th Cir. Dec. 21, 2001) (order limiting the scope of appeal to a review of Jimenez's appeal from dismissal of the case).

*Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) ("a court may impose sanctions on *a party* for making arguments or filing claims that are frivolous, legally unreasonable, [or] without factual foundation . . . .") (emphasis added). *See also In re Alberto*, 119 B.R. 985, 993 (Bankr. N.D. Ill. 1990) ("[w]hen an attorney and client share responsibility for litigation strategy and such strategy violates Rule 11, courts can impose joint and several liability. . .").

"We review a trial court's decision to grant Rule 11 sanctions with deference . . . 'because the trial court alone has an intimate familiarity with the relevant proceedings. . . .'" *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999) (quoting *R.K. Harp Inv. Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir. 1987)). Indeed, "the district court is better situated than the court of appeals to marshal the pertinent facts." *Cooter & Gell*, 496 U.S. at 402. A district court's imposition of Rule 11 sanctions is thus "'reversible only when there has been an abuse of discretion.'" *Divane*, 200 F.3d at 1025.

On appeal, Jimenez does not contest the trial court's finding that she relied on falsified documents to bolster her discrimination claims, and with good reason, for the trial court's assessment of her fraudulent conduct has ample support in the record. *See*, *e.g.*, Bassett Aff. ¶ 5, Def. Ex. 3 (noting that an undated letter attributed to her by Jimenez was "basically identical" to a November 30, 1993 Letter in fact written by her, except that certain racially hostile language had been added); *id.* ¶ 8 (stating that the date on an alleged e-mail message attributed to her was inconsistent with the day of the week on which it was purportedly sent); Tr. at 96 (remarking that she was "unfamiliar" with the language used in a May 5, 1995 e-mail that Jimenez claimed she had written).

Perhaps because an attack on the district court's finding of fraud would be futile, Jimenez instead argues

that the *severity* of the district court's sanction of such behavior—*i.e.*, its dismissal of her amended complaint—was an abuse of its discretion. She claims that "[t]here is nothing in the Court's record to indicate . . . that [her claims of denial of equal protection and retaliation] were fraudulent." Jimenez Br. at 14. Though her precise reasoning is difficult to comprehend, Jimenez apparently argues that the district court's sanction (dismissal) should have been less harsh because not *all* of her civil rights claims were based on the fraudulent documents. We disagree.

Jimenez's equal protection and retaliation claims are inseparable from the fraudulent allegations of discrimination underlying those claims. Indeed, Jimenez's *entire* cause of action rests on her claim that the College allegedly discriminated against her based on her race and origin—the very allegation she sought to bolster with a bevy of falsified documents. *See* Second Amended Complaint ¶¶ 1-4 (outlining claims of equal protection violation, hostile work environment, and disparate treatment, all of which are supported by Jimenez's allegation of racial discrimination as evidenced by the letters and e-mails).

We recognize that dismissal is a harsh sanction. Thus, we understand why we have uncovered no prior instance in which this Court has reviewed such an obvious and serious Rule 11 sanction for an abuse of discretion. Nonetheless, it is proper for the trial court to impose a severe sanction where the sanction is sufficient to deter repetition of the misconduct or to deter similar conduct by third parties. Fed. R. Civ. P. 11(c)(2). And, in all cases, we are to give the trial court "*significant discretion* in determining *what* sanctions . . . should be imposed for a [Rule 11] violation." *Fries*, 146 F.3d at 459 (emphasis added). Moreover, as this Court has recognized, non-monetary, as well as monetary sanction, may be applied under the Rule, so

long as the sanction is reasonably necessary to deter repetition of the offending conduct. *Id.*

The sanction of dismissal meets the requisite criteria in this case, given the egregious nature of Jimenez's conduct. Jimenez's claim was so unmeritorious and her behavior so deceptive that the filing of her baseless claim amounted to a veritable attack on our system of justice. Although Jimenez believes the district court's order of dismissal was an abuse of discretion, the only abuses ascertainable in this case were those committed by her counsel and Jimenez herself. By bringing "false, fraudulent and salacious charges of discrimination" against Defendants, *Jimenez I*, at 15, Jimenez exploited the judicial process and subjected her former colleagues and employer to unnecessary embarrassment and mental anguish. *See*, *e.g.*, Tr. at 88 (stating that it was "very painful" to see her "name attached to [such words]"); *id.* at 112 (noting "outrage" and "hurt" at the "fact that somebody would think [he was] capable of [making the statements attributed to him]").

In light of the willful and malicious nature of Jimenez's flagrant Rule 11 violation, *Jimenez I*, at 14 (calling Jimenez's actions "the single *most blatant* example of a Rule 11 violation [the district court had ever] seen") (emphasis added), we hold that the decision to dismiss Jimenez's case, as a sanction of her abusive conduct, was within the bounds of the trial court's sound discretion. *See Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (noting that where "a litigant's conduct abuses the judicial process . . . dismissal of [her] lawsuit [is] a remedy within the inherent power of the court.").

## B.   *Rule 38 Sanctions*

The College has filed a Motion for Appellate Sanctions under Rule 38 of the Federal Rules of Appellate Procedure.

Pursuant to Rule 38, we may award just damages and single or double costs to Appellee as a sanction against Appellant for filing a frivolous appeal. An appeal is "frivolous" if its "'result is foreordained by the lack of substance to the appellant's arguments.'" *United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 761 (7th Cir. 1999).

The appeal in the instant case is patently frivolous. In spite of the trial judge's finding that they had submitted "obviously fraudulent documents" to the court, and had perpetrated "the most blatant example of a Rule 11 violation that [she had ever] seen," *Jimenez v. Madison Area Tech. College, et al.*, No. 00-C-424, at 14 (W.D. Wis. Aug. 13, 2001), Jimenez and Nunnery had the audacity to file an appeal from the trial court's sanction. The "foreordination" of Jimenez's failure on appeal could not have been more obvious. Not only did Jimenez cite to the wrong legal standard in her brief before this Court,[4] she presented only *one page* of legal argument in her favor. In light of the flagrancy of Jimenez's Rule 11 violation, and the lack of support for her position on appeal, when considering the direct and castigating language reciting parts of the record by the trial judge, we conclude that appellate sanctions are appropriate in this case.

As far as the amount of attorneys' fees is concerned, the College has presented affidavits attesting that its counsel has incurred $17,156.99 in costs and expenses since the filing of this appeal. The College's counsel has not, however, given a specific breakdown of those fees and costs. Despite its claim to have spent over 125 hours dealing with legal matters connected to this appeal, counsel has made no effort to inform the Court exactly *what* was done during those 125 hours. Indeed, such time

---

[4] Jimenez addressed Rule 37(b) rather than Rule 11. *See* Jimenez Br. at 14.

estimates are surprisingly high in light of the simplicity of the legal issues presented to this Court.

We are not satisfied with the vague documentation of costs and expenses heretofore provided by the College's counsel. Thus, we order counsel to submit, within the next fifteen days, a more detailed schedule of its time allocation and other expenses incurred in connection with this appeal.

*III.    Conclusion*

The district court's imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure is affirmed and the Motion for Rule 38 Appellate Sanctions granted. We further order that a copy of this opinion be sent to the Wisconsin Supreme Court Office of Lawyer Regulation.

AFFIRMED; MOTION FOR RULE 38
SANCTIONS GRANTED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—2-28-03