# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3371

MELVIN D. REED,

*Plaintiff-Appellant,*

v.

THE GREAT LAKES COMPANIES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00-C-1617—**Rudolph T. Randa**, *Chief Judge.*

ARGUED FEBRUARY 12, 2003—DECIDED MAY 30, 2003

Before BAUER, POSNER, and RIPPLE, *Circuit Judges.*

POSNER, *Circuit Judge.* Melvin Reed, the plaintiff in this Title VII religious-discrimination suit, appeals from the grant of summary judgment to his former employer, Great Lakes, and from the imposition of sanctions on him. His lawyer wants the $500 sanction imposed on her also reversed, but she failed to file a notice of appeal and the notice of appeal that she filed on behalf of Reed does not mention her sanction. Although Fed. R. App. P. 3(c)(4) provides that an appeal should not be dismissed "for failure to name a party whose intent to appeal is otherwise clear from the notice [of appeal]," the lawyer's intent to appeal is

not clear from the notice of appeal—indeed is not so much as hinted at in it—and as a result we lack jurisdiction over her challenge to the sanction that was imposed on her. *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 660-61 (11th Cir. 1998); *Maerki v. Wilson*, 128 F.3d 1005, 1007-08 (6th Cir. 1997); *Agee v. Paramount Communications, Inc.*, 114 F.3d 395, 399 (2d Cir. 1997); compare *Spain v. Board of Education*, 214 F.3d 925, 929 (7th Cir. 2000); *Laurino v. Tate*, 220 F.3d 1213, 1218 (10th Cir. 2000).

Construed as favorably to Reed as the record permits, the facts of the case are as follows. He was hired to be the executive housekeeper of a newly opened Holiday Inn that Great Lakes operates in Milwaukee. One of his duties was to see to it that a copy of the Bible, supplied free of charge to the hotel by the Gideons, was placed in every room. It is customary for representatives of management to meet with the Gideons when they deliver Bibles to a newly opened hotel. Reed had been working for Great Lakes for less than a month when the Gideons showed up to deliver the Bibles. A few days before their scheduled arrival, the manager of the Holiday Inn had told Reed in a joking manner that they were going to "pray with the Gideons," which Reed understood to mean that, given his responsibility for the distribution of the Bibles to the rooms, he was to accompany the manager to the meeting at which they would receive the Bibles from the Gideons. Reed did not object to attending the meeting. But, to the manager's surprise, at the meeting the Gideons, besides delivering Bibles, did some Bible reading and some praying. Reed was offended by the religious character of the meeting and left in the middle, to the manager's chagrin. Later in the day, the manager ran into Reed and told him: "Don't do that again, you embarrassed me." Reed riposted: "You can't compel me to a religious event," to which the manager replied that Reed would do what he was told to do.

Reed responded, "Oh, hell no, you won't, not when it comes to my spirituality," whereupon the manager fired him for insubordination.

Oddly, Reed at his deposition refused to indicate what if any religious affiliation or beliefs (or nonbeliefs) he has; refused even to deny that he might be a Gideon! His position was that Title VII forbids an employer to require an employee to attend a religious meeting, period.

Title VII does forbid an employer, unless it is a religious organization, 42 U.S.C. § 2000e-1; *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 329-30 (1987), which Great Lakes is not, to discriminate against an employee on the basis of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). And for these purposes, as assumed by the parties, as strongly intimated in *EEOC v. Townley Engineering & Mfg. Co.*, 859 F.2d 610, 613-14 n. 5 (9th Cir. 1988), and *Young v. Southwestern Savings & Loan Ass'n*, 509 F.2d 140, 142 (5th Cir. 1975), and as supported by analogy to cases under the free-exercise clause of the First Amendment, *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 589-90 (1989); *Wallace v. Jaffree*, 472 U.S. 38, 52-53 (1985); *Books v. City of Elkhart*, 235 F.3d 292, 307 (7th Cir. 2000) *Warner v. Orange County Dep't of Probation*, 173 F.3d 120, 120-22 (2d Cir. 1999)—cases which hold that religious freedom includes the freedom to reject religion—"religion" includes antipathy to religion. And so an atheist (which Reed may or may not be) cannot be fired because his employer dislikes atheists. If we think of religion as taking a position on divinity, then atheism is indeed a form of religion.

But there is no indication that Reed was fired because of his religious beliefs, identity, or observances or because of his aversion to religion, to Christianity, or to the Gideons, whatever the case may be (remember that we don't know anything about his religion or lack of religion). Great Lakes

accepts Bibles from the Gideons because the Bibles are free, not because any of Great Lakes' owners or managers, including the manager of the Holiday Inn who fired Reed, is a Gideon. So far as appears, none is. The manager's joking reference to "pray[ing] with the Gideons" makes it pretty clear that he is not one of them; anyway there is no contention that he is. For that matter, there is no evidence that he expected to encounter prayers and Bible reading at the meeting with them. At previous such meetings the Gideons had handed over the Bibles and the manager had thanked them, and that was that. The religious service was a surprise. It is apparent that the manager fired Reed because Reed's sudden departure from the meeting was embarrassing to the manager, who would be in trouble with his superiors if the Gideons became huffy and cut off the supply of free Bibles to Great Lakes hotels, and also because Reed's refusal to see the manager's point of view indicated that he was unlikely to be a cooperative employee.

The manager *must* have been indifferent to Reed's religious views, because Reed never expressed them to the manager; to this day we do not know what his religion is, as he refused to say at his deposition. It is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he doesn't know the employee's religion (or lack thereof, which, as we have noted, is in the eyes of the law a form of religion), *O'Connor v. Northshore Int'l Ins. Services*, 325 F.3d 73, 74 (1st Cir. 2003) (per curiam); *Lubetsky v. Applied Card System, Inc.*, 296 F.3d 1301, 1305-06 (11th Cir. 2002), though the employee can survive summary judgment if, while declining to specify his religious beliefs, he attests that they differ from his employer's and that that is why he was fired. *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997);

*Shapolia v. Los Alamos Nat'l Laboratory*, 992 F.2d 1033, 1037 (10th Cir. 1993).

Reed has utterly failed to make a prima facie case of intentional religious discrimination. But he has another string to his bow. Besides forbidding intentional discrimination, Title VII requires an employer to try to accommodate the religious needs of its employees, that is, to try to adjust the requirements of the job so that the employee can remain employed without giving up the practice of his religion, provided the adjustment would not work an undue hardship on the employer. 42 U.S.C. § 2000e(j); *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 70 (1986); *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 475 (7th Cir. 2001); *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002); *Shelton v. University of Medicine & Dentistry*, 223 F.3d 220, 224 (3d Cir. 2000). And again for these purposes hostility to religion counts as a form of religion. So if attending a meeting at which Gideons might pray or read from the Bible would offend Reed's religious or antireligious sensibilities, he might be entitled to an accommodation.

We say "might be" rather than "would be" for two reasons. First, the duty to accommodate is not absolute; the cost to the employer must be considered. *Ansonia Board of Education v. Philbrook, supra*, 479 U.S. at 70; *Rodriguez v. City of Chicago*, 156 F.3d 771 (7th Cir. 1998) (majority and concurring opinions); *Ryan v. United States Dep't of Justice*, 950 F.2d 458, 461-62 (7th Cir. 1991); *Daniels v. City of Arlington*, 246 F.3d 500, 506 (5th Cir. 2001); *Shelton v. University of Medicine & Dentistry, supra*, 223 F.3d at 222-23, 228. Second, an employee is not permitted to redefine a purely personal preference or aversion as a religious belief. *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002);

*Seshadri v. Kasraian*, 130 F.3d 798, 800-01 (7th Cir. 1997) (belief in the deeply spiritual effects of eating Kozy Kitten People/Cat Food); *Vetter v. Farmland Industries, Inc.*, 120 F.3d 749, 752-53 (8th Cir. 1997). Otherwise he could announce without warning that white walls or venetian blinds offended his "spirituality," and the employer would have to scramble to see whether it was feasible to accommodate him by repainting the walls or substituting curtains for venetian blinds. This case is not so extreme, because compelled attendance at sectarian religious services is the sort of thing that is likely to offend someone who does not belong to the sect in question, though we repeat that for all we know Reed is a Gideon and his claim for accommodation therefore completely spurious.

But putting that possibility to one side, and assuming that it would have been no sort of hardship for Great Lakes to have excused Reed from attendance at meetings with the Gideons, who are hardly likely to ask, "Why isn't the executive housekeeper here?" we think the district court was right to grant summary judgment for Great Lakes with respect to this claim as well as the disparate-treatment claim. There is a line, indistinct but important, between an employee who seeks an accommodation to his religious faith and an employee who asserts as Reed did an unqualified right to disobey orders that he deems inconsistent with his faith though he refuses to indicate at what points that faith intersects the requirements of his job. Today he storms out of a meeting with the Gideons; tomorrow he may refuse to place their Bibles in the rooms; the day after that he may announce that he will not come to work on the day when the Gideons visit. Reed failed to give any indication of what future occurrences at the Holiday Inn would impel him to make a scene embarrassing to the manager and potentially injurious to the employer. Title VII imposes a duty on the employer

but also a reciprocal duty on the employee to give fair warning of the employment practices that will interfere with his religion and that he therefore wants waived or adjusted. *EEOC v. United Parcel Service*, 94 F.3d 314, 317 (7th Cir. 1996); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978); *Cosme v. Henderson, supra*, 287 F.3d at 158 (2d Cir. 2002); *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019-21 (4th Cir. 1996); *Brown v. Polk County*, 61 F.3d 650, 654 (8th Cir. 1995). A person's religion is not like his sex or race—something obvious at a glance. Even if he wears a religious symbol, such as a cross or a yarmulka, this may not pinpoint his particular beliefs and observances; and anyway employers are not charged with detailed knowledge of the beliefs and observances associated with particular sects. Suppose the employee is an Orthodox Jew and believes that it is deeply sinful to work past sundown on Friday. He does not tell his employer, the owner of a hardware store that is open from 9 a.m. to 6 p.m. on Fridays, who leaves the employee in sole charge of the store one Friday afternoon in mid-winter, and at 4 p.m. the employee leaves the store. The employer could fire him without being thought guilty of failing to accommodate his religious needs. This case is similar.

We turn to the propriety of the sanctions that the district judge imposed on Reed for filing a frivolous claim, which is an apt description of his claim to having been intentionally discriminated against on account of his religion. The judge ordered him to pay Great Lakes $1,000 and write a letter of apology to Great Lakes, and also forbade him to file any further lawsuits until he complies with the rest of the order. If the sanction had consisted merely of a monetary penalty for filing a frivolous claim, we would affirm. E.g., *Smith v. Gilmore*, 111 F.3d 55 (7th Cir. 1997) (per curiam); *Saunders v. Bush*, 15 F.3d 64 (5th Cir. 1994). The fact that Reed's accommodation claim, while

it has failed, was not frivolous would be no bar to impos-
ing sanctions for putting his opponent to the expense of
opposing a frivolous claim (or defense) just because he had
a nonfrivolous claim as well. *Jimenez v. Madison Area
Technical College*, 321 F.3d 652, 656 (7th Cir. 2003); *Senese
v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826
n. 3 (7th Cir. 2001); *Fries v. Helsper*, 146 F.3d 452, 458 (7th
Cir. 1998); *Antonious v. Spaulding & Evenflo Cos.*, 275 F.3d
1066, 1075 (Fed. Cir. 2002); *Townsend v. Holman Consult-
ing Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990). But the dis-
trict judge's basis for imposing the sanctions he did on Reed
was different; it was that in the past 15 years Reed had
worked for 25 different employers, often (as in this case)
for a month or less, and had filed 13 employment dis-
crimination suits in the federal district court in Milwaukee.
He had won a partial victory in one of the suits but had
lost all the rest, some of them through abandonment. The
judge inferred that Reed is engaged in a pattern of extor-
tion, working for an employer just long enough to obtain a
pretext for suing him.

There is indeed something amiss in Reed's employment
and litigation history, though extortion doesn't seem the
word for it. Were he engaged in extortion he would have
dropped his suits in exchange for nuisance-suit settle-
ments. So far as appears, his 15-year campaign of "extor-
tion" hasn't yielded him a penny, except in his one victory,
where he obtained damages in a trial and not by way of a
settlement, nuisance or otherwise. It seems more likely that
he has a psychological problem than that he has been
committing extortion for the last 15 years with nothing
to show for it.

Even so, a judge can sanction a litigant for filing a frivo-
lous suit or claim regardless of the motives for such fil-
ing, and in deciding whether to sanction such a litigant

he can take into account a history of frivolous litigation. *United States ex rel. Verdone v. Circuit Court*, 73 F.3d 669 (7th Cir. 1995) (per curiam); *Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1231-33 (10th Cir. 1998) (per curiam); *Wrenn v. Gould*, 808 F.2d 493, 504-06 (6th Cir. 1987); see also *Grove Fresh Distributors, Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1293-96 and n. 15 (11th Cir. 2002). The fact that the previous suits were the result of an unbalanced mind rather than an extortionate one would be no defense. Yet, odd as it may seem, none of Reed's previous cases has been adjudged frivolous. Nor did the district judge find that any of them had been frivolous. The sanctions order thus appears to rest on nothing more solid than the judge's speculation that Reed is an extortionist. The speculation is too thin to sustain that order. The order must therefore be vacated and the matter returned to the judge for reconsideration in light of this opinion; but the grant of summary judgment to Great Lakes is affirmed.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED.

RIPPLE, *Circuit Judge*, concurring in part and dissenting in part. I agree that Mr. Reed has failed to establish a case of intentional discrimination on the basis of religion. Nor has he established a case of failure to accommodate his religious beliefs on the part of Great Lakes. The deposition testimony of Mr. Reed makes it clear that he was quite unwilling to enter into a dialogue with his employer on that matter.

I do not, however, regard either of the allegations made by Mr. Reed to be frivolous. Accordingly, I would reverse that part of the judgment of the district court that imposes sanctions.

A true Copy:

    Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*