In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Willie J. NUNNERY, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Willie J. NUNNERY, Respondent-Appellant.

Supreme Court

No. 2004AP2542–D. Oral argument September 12, 2006.
—Decided January 4, 2007.

2007 WI 1

(Also reported in 725 N.W.2d 613.)

For the respondent-appellant there were briefs by *Daniel W. Hildebrand* and *DeWitt Ross & Stevens, S.C.,* Madison, and oral argument by *Daniel W. Hildebrand.*

For the complainant-respondent there was a brief by *Julie M. Falk* and the *Office of Lawyer Regulation,* Madison, and oral argument by *Julie M. Falk.*

¶ 1. PER CURIAM. Attorney Willie J. Nunnery appeals a referee's report and recommendation finding misconduct in 13 of 14 counts charged in an Office of Lawyer Regulation (OLR) disciplinary complaint. The referee recommends that Attorney Nunnery's license to practice law be suspended for two months, that he pay the costs of the disciplinary proceeding, and reinstate-

ment be conditioned on proof he paid the sanction imposed in the E.J. client matter.

¶ 2. Attorney Nunnery presents two issues: (1) whether the OLR proved Count 10 of the disciplinary complaint alleging that Attorney Nunnery violated SCR 20:1.1[1] by failing to discover that his client's documents were fraudulent; and (2) whether the referee's recommended sanctions are appropriate.

¶ 3. We conclude the referee's findings of fact are not clearly erroneous and we adopt them. *See In re Disciplinary Proceedings Against Polich,* 2005 WI 36, ¶ 4, 279 Wis. 2d 266, 694 N.W.2d 367. Following our de novo review of the referee's legal conclusions, we determine they are consistent with controlling law. *See id.* Consequently, we reject Attorney Nunnery's challenge to Count 10.

¶ 4. We also reject Attorney Nunnery's challenge to the recommended sanction. This court may impose whatever sanction it deems appropriate regardless of the referee's recommendation. *Id.* We agree with the referee that the misconduct found warrants a two-month suspension, the imposition of costs, and the recommended condition for reinstatement. Therefore, we approve the referee's report, conclusions, and recommendation. We suspend Attorney Nunnery's license to practice law for two months, require he pay the costs of the disciplinary proceeding, and condition reinstatement on proof he has paid the sanction imposed in the E.J. client matter.

---

[1] SCR 20:1.1 states: "Competence. A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

¶ 5. Attorney Willie J. Nunnery was admitted to practice law in Wisconsin in 1976 and in Louisiana in 1985. He practices in Madison and has not been previously disciplined. The referee found that Attorney Nunnery, a sole practitioner who concentrated on plaintiffs' civil rights and employment discrimination matters, has gained the reputation of a tenacious, trustworthy, and courteous trial lawyer.

¶ 6. This disciplinary proceeding stems from six client matters between 1997 and 2003. Counts 1 through 5 of the disciplinary complaint involve a client, T.T., who retained Attorney Nunnery in 1997 to represent her in an employment discrimination dispute against her employer. T.T. and Attorney Nunnery reached an agreement as to attorney fees. Although T.T. understood this agreement and it was never changed, it was not reduced to writing.

¶ 7. In December 1997 the Wisconsin Equal Rights Division (ERD) requested Attorney Nunnery to respond by January 28, 1998, to the employer's answer to T.T.'s employment discrimination complaint. Attorney Nunnery requested two extensions. The division granted a final extension until March 6, 1998. Attorney Nunnery failed to file a response by the deadline. On March 17, 1998, the ERD sent T.T. a certified letter with a copy to Attorney Nunnery providing T.T. an additional 20 days to respond to its December 1997 letter. Neither T.T. nor Attorney Nunnery responded.

¶ 8. On April 22, 1998, the ERD dismissed T.T.'s complaint due to her failure to respond. Subsequently, T.T. repeatedly attempted to telephone Attorney Nunnery for information, but was continually informed he was out of the office. In May 1998 he met briefly with T.T., discussed the dismissal of the complaint, and advised the statute of limitations to file a federal

lawsuit had not expired. Subsequently, T.T. attempted to telephone Attorney Nunnery several times, but was unable to reach him or the calls were very brief.

¶ 9. In March 1999 T.T. sent Attorney Nunnery a $200 check for the federal lawsuit filing fee. He did not deposit the check into his client trust account, but instead placed it in T.T.'s file. Although Attorney Nunnery never returned the check to T.T. and failed to file the federal lawsuit at that time, the check was never negotiated and T.T. knew this.

¶ 10. Because T.T.'s employer's franchise was sold, Attorney Nunnery advised filing a separate complaint with the ERD against the new owner. In July 1999 the second complaint was filed with the ERD. T.T. and Attorney Nunnery discussed the lawsuit in person in the summer of 1999; this was the last time they met.

¶ 11. The employer responded to the second complaint. Neither T.T. nor Nunnery submitted a reply. In November 1999 the ERD made an initial no probable cause determination based on T.T.'s failure to reply to the employer's statements and the lack of information on record to verify the complaint's allegations. The referee found that Attorney Nunnery never intended to pursue the ERD complaints, but intended only to use them to conduct discovery to support a federal court claim and that he had conducted additional investigation in the case.

¶ 12. In January 2000 the U.S. Equal Employment Opportunity Commission sent T.T. a determination that there was no reasonable cause to believe her charge was true, but said if she wished to pursue the matter she could do so by filing a private action within 90 days. Once the 90–day period expired the right to sue

would be lost. Attorney Nunnery did not file a private action in federal court within 90 days and T.T.'s claims were time barred.

¶ 13. The referee found that T.T. did not anticipate recovery through an ERD proceeding or that she would receive any recovery unless a federal court case was commenced. The referee further found there was no showing there would have been merit to a federal court suit and no showing that T.T. sustained any financial loss through Attorney Nunnery's action or inaction.

¶ 14. T.T. filed a grievance against Attorney Nunnery with the OLR. The OLR investigation was completed by December 20, 2001. The referee found Attorney Nunnery cooperated fully with the OLR investigation and that the OLR's delay until September 2004 in bringing the present action was detrimental to Attorney Nunnery's defense due to his and T.T.'s faded memories with the long passage of time.

¶ 15. The referee concluded the facts demonstrated Attorney Nunnery committed five violations:

> Count 1: By orally agreeing to represent [T.T.] on a 60/40 contingency basis and failing to reduce that agreement to writing, Nunnery failed to put a contingent fee in writing, in violation of SCR [20:1.5(c)];[2]

---

[2] The OLR complaint cites the violation alleged in Count 1 as SCR 20:1.5(a) although the correct citation is SCR 20:1.5(c). There has been no objection raised as to the discrepancy. Consequently, we refer to the proper citation. SCR 20:1.5(c) states: Fees

> (c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the

Count 2: By placing [T.T.]'s $200.00 check in the client's file, as opposed to his trust account, Nunnery failed to hold in trust, separate from his own property, that property of a client that is in the lawyer's possession in connection with a representation, in violation of [former] SCR 20:1.15(a);[3]

Count 3: By failing to respond to the ERD deadlines, resulting in the dismissal of [T.T.]'s ERD complaint; by failing to submit a response to the employer's answer to [T.T.]'s second ERD complaint, and by failing to provide information supporting [T.T.]'s allegations, resulting in a finding of no probable cause and a dismissal of [T.T.]'s second ERD complaint, and by failing to file a federal lawsuit within 90 days after the Equal Employment Opportunity Commission issued its determination of no probable cause, resulting in [T.T.]'s case being barred, Nunnery failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3;[4]

Count 4: By failing to communicate with [T.T.] regarding the first ERD complaint's status and the complaint's subsequent dismissal; and by failing to

percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

[3] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(a) provided in relevant part that "[a] lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity."

[4] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

respond to [T.T.]'s various phone calls and requests for information regarding the case and complaint's dismissal, Nunnery failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a)[5]; and

Count 5: By failing to explain to [T.T.] that he never intended to pursue the ERD complaints and only intended to use them for discovery purposes, Nunnery failed to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation, in violation of SCR 20:1.4(b).[6]

¶ 16. The next matter, Count 6, arose out of the client, J.A., matter, and alleged that Attorney Nunnery knowingly advanced a claim or defense unwarranted under existing law, without a good-faith argument for an extension, modification or reversal of the law. In 1999 J.A. retained Attorney Nunnery to represent her with respect to an order to raze a house she owned in Kenosha. She paid Attorney Nunnery an initial fee of $700 and a second fee payment of $1750.

¶ 17. The time to challenge the raze order expired June 11, 1999. Attorney Nunnery filed a petition for judicial review after this time expired. He claimed that he acted immediately after receiving the initial contact from J.A. on a Friday. Attorney Nunnery subsequently

---

[5] SCR 20:1.4(a) states: "Communication. A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[6] SCR 20:1.4(b) states: "Communication. A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

dismissed the petition. In his petition to review the raze order, Attorney Nunnery had not addressed the time to appeal the order nor made a good-faith argument to extend the time. The referee concluded that in view of the haste and urgency, this oversight was understandable.

¶ 18. In November 1999 Attorney Nunnery filed a second petition to review the raze order, and again did not address the time period to appeal the order nor make a good-faith argument for an extension. The city filed an answer to the second petition, asserting the action was time barred. Attorney Nunnery stipulated to voluntary dismissal.

¶ 19. After the city raised its time barrier defense, Attorney Nunnery admitted neither petition had any basis in law or fact. The city did not, however, assert that either action was frivolous or brought in bad faith. The referee found that as a result of Attorney Nunnery's efforts, the city offered J.A. the opportunity to fix up the property to avoid being razed. J.A., however, eventually decided to abandon efforts to save the structure.

¶ 20. The referee determined that by filing the second petition for judicial review in November 1999, after the filing period had expired and without a good-faith argument to support an extension, modification, or reversal of existing law, Attorney Nunnery knowingly advanced a claim that was unwarranted under existing law, contrary to SCR 20:3.1(a)(1),[7] as charged in Count 6.

---

[7] SCR 20:3.1(a)(1) states that in representing a client, a lawyer shall not "knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may

¶ 21. Counts 7 through 9 alleged three rules violations concerning client D.D. In 1997 D.D. retained Attorney Nunnery to represent him in an employment discrimination matter. Attorney Nunnery forwarded to D.D.'s former employer a draft of a federal employment discrimination complaint and a demand for a $30,000 settlement. Attorney Nunnery did not file the federal complaint.

¶ 22. In May 1997, based on a discrimination complaint filed with the Wisconsin Equal Rights Division (ERD), an initial determination of no probable cause was issued. A notice of appeal was filed with the ERD and the case was certified for hearing on the probable cause issue. Attorney Nunnery canceled the hearing and dismissed the complaint. However, he neither consulted with D.D. before dismissing the complaint nor informed D.D. about the dismissal. Attorney Nunnery asserted that he used the process solely for discovery in the federal lawsuit, but did not explain this strategy to D.D.

¶ 23. In August 1997 Attorney Nunnery submitted a discovery request to D.D.'s former employer resulting in the disclosure that D.D. had been fired for violating a company policy. After discovery was completed and during an approximately one and one-half year period, D.D. attempted to telephone Attorney Nunnery to check the status of his claim, but was seldom able to reach him. When D.D. did, he was informed everything was on track.

¶ 24. Attorney Nunnery asserted that he placed D.D.'s case in abeyance while waiting for a decision in a federal employment discrimination case, which Attor-

advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law."

299

ney Nunnery claimed had a similar legal theory as the D.D. case. Attorney Nunnery failed to inform D.D., however, that his case was on hold.

¶ 25. In October 2001 D.D. terminated Attorney Nunnery's representation. After D.D. complained to the OLR, Attorney Nunnery met with D.D., showed him work he performed on his file and apologized for his lack of communication. Attorney Nunnery offered to refund the $1000 retainer and indicated the check would be mailed. D.D. called Attorney Nunnery three weeks later to inquire about the $1000 payment. Attorney Nunnery told D.D. he was busy, his mother had been ill, and the check was in the mail. Attorney Nunnery, however, never sent D.D. the check, but asserted he did not do so because he did not want to create the impression he was attempting to influence the OLR investigation.

¶ 26. Based on these facts, the referee concluded that by dismissing the ERD complaint and canceling the hearing without discussing this with D.D., and by failing to explain to D.D. that he never intended to pursue the complaint other than for discovery purposes, Attorney Nunnery failed to explain this matter to the extent reasonably necessary to permit the client to make an informed decision regarding the representation, contrary to SCR 20:1.4(b), in support of Count 7.

¶ 27. The referee further concluded that by failing to perform any work on D.D.'s case from the time he completed discovery in August of 1997 until D.D. terminated his representation in October 2001, Attorney Nunnery failed to act with reasonable diligence in representing a client, contrary to SCR 20:1.3, as alleged in Count 8. Also, by failing to respond to D.D.'s requests for information and assuring him that everything was on track, and by failing to explain to D.D. that he

intended to place his case on hold and no longer intended to refund a portion of his retainer because he did not want to create the impression he was trying to influence the OLR's investigation, and by informing D.D. that he had mailed the refund, Attorney Nunnery failed to keep a client reasonably informed and promptly comply with requests for information, contrary to SCR 20:1.4(a), as alleged in Count 9.

¶ 28. In Counts 10 and 11, the disciplinary complaint alleged misconduct with respect to Attorney Nunnery's representation of E.J. Count 10 alleged that Attorney Nunnery failed to provide competent representation, contrary to SCR 20:1.1. Count 11 alleged that Attorney Nunnery filed a suit and took other action on behalf of the client when he knew, or it was obvious, that the action would serve merely to harass or maliciously injure another, contrary to SCR 20:3.1(a)(3).[8] The referee concluded the facts supported Count 10, but not Count 11.

¶ 29. In 1997 E.J. retained Attorney Nunnery to represent her in a possible employment law action against her employer, a technical college. She alleged she was racially discriminated against and sexually harassed by the college personnel. E.J. provided Attorney Nunnery a number of plastic-laminated documents to support her claims, assuring him that the documents were authentic. She said she had laminated the documents to prevent them from being stolen. The referee found that this "claimed reason for the lamination is absurd."

---

[8] SCR 20:3.1(a)(3) states that in representing a client, a lawyer shall not "file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another."

¶ 30. The documents consisted of purported e-mails, letters, and memos to E.J. from the college personnel containing racially derogatory comments, an apology for terrible sexual assaults, harassment and threats, and were found to be "extraordinarily damaging" to the college. The referee found the documents were suspicious on their face in that they were laminated and contained inconsistent dates. However, the referee noted the discrepancies between the dates and the days of the week would not have been readily apparent. None of the purported originals, or even copies, was offered into evidence during the disciplinary proceedings, but in a U.S. District Court for the Western District of Wisconsin opinion and order, they were described as obviously fraudulent documents.[9]

¶ 31. The referee found that Attorney Nunnery had failed to inquire into the veracity of the e-mails and letters E.J. provided. The college's legal counsel had told Attorney Nunnery that the documents' purported authors denied writing them and that he would like to arrange a time to review the originals; there was, however, no indication defense counsel followed through with examining them or with discovery.

¶ 32. The referee found that in January 1998 Attorney Nunnery filed a federal action against the college in the U.S. District Court for the Western District of Wisconsin, which E.J. subsequently moved to dismiss.[10] In July 2000 Attorney Nunnery filed a second

[9] *Jimenez v. Madison Area Technical College,* No. 00–C-424 (W.D. Wis. Aug. 13, 2001).

[10] In the U.S. District Court opinion, Judge Crabb stated that Attorney Hal Harlowe represented E.J. in the first January 1998 suit; this discrepancy was not mentioned by either party and appears immaterial.

federal court action on behalf of E.J. against the college in the U.S. District Court for the Western District of Wisconsin.

¶ 33. Thereafter, defense counsel informed Attorney Nunnery of a 1997 independent medical examination concluding that E.J. had demonstrated malingering and a disorder related to pathological lying. Defense counsel told Attorney Nunnery that a medical expert would testify E.J. was falsifying her conditions and warned Attorney Nunnery that E.J.'s complaint might run afoul of Federal Rule 11.[11] The referee found, however, the independent medical examination suggested merely that it was difficult to rule out malingering and failed to show defense counsel's claims were reasonable.

¶ 34. Attorney Nunnery filed a second amended complaint in November 2000 which contained for the first time specific details from the laminated documents. In December 2000 the defense counsel sent Attorney Nunnery affidavits from college personnel saying that the e-mails, memos, and letters E.J. produced were fabrications. He reiterated that Attorney Nunnery had not reasonably inquired as to the truth of the allegations under Rule 11. Attorney Nunnery responded he had spoken to E.J. and shared the affidavits with her, but she would not drop the lawsuit and he understood the sanction risk.

¶ 35. In March 2001 the college moved for sanctions in the federal suit. At the motion hearing, numer-

---

[11] Under FED. R. CIV. P. 11(b)(3), by the act of submitting a pleading to the court, a lawyer certifies that to the best of his information, knowledge and belief, formed after inquiry reasonable under the circumstances, the allegations of the pleading have evidentiary support. *See Jimenez v. Madison Area Technical College,* 321 F.3d 652, 656 (7th Cir. 2003).

ous witnesses testified including E.J., Attorney Nunnery, and college personnel. Following the hearing the federal district court judge found: "This is truly, and without any competition, the most blatant case of a Rule 11 violation that I've ever seen. I think Mr. Nunnery, you have a client who is not truthful, who is willing to take any steps to, I don't know, retaliate or hurt people she believed retaliated against her or hurt her. . . . Both of you share the blame for reliance on these false and forged pieces of correspondence." The district court dismissed the complaint and assessed Attorney Nunnery with the college's attorney fees, but did not grant its motion for maintaining vexatious litigation.

¶ 36. Attorney Nunnery did not appeal the order imposing sanctions on him, but did appeal the portion dismissing the complaint as a sanction against E.J. In a February 2003 decision, the U.S. Court of Appeals for the Seventh Circuit rejected the appeal as "patently frivolous," and affirmed the Rule 11 sanctions against E.J. It also granted the college's motion for appellate sanctions. The Seventh Circuit Court of Appeals wrote:

> The sanction of dismissal meets the requisite criteria in this case, given the egregious nature of [E.J.]'s conduct. [E.J.]'s claim was so unmeritorious and her behavior so deceptive that the filing of her baseless claim amounted to a veritable attack on our system of justice. Although [E.J.] believes the district court's order of dismissal was an abuse of discretion, the only abuses ascertainable in this case were those committed by her counsel and [E.J.] herself. By bringing 'false, fraudulent and salacious charges of discrimination' against Defendants . . . [E.J.] exploited the judicial process and subjected her former colleagues and employer to unnecessary embarrassment and mental anguish.

> In light of the willful and malicious nature of [E.J.]'s flagrant Rule 11 violation . . . we hold that the decision to dismiss [E.J.]'s case, as a sanction of her abusive conduct, was within the bounds of the trial court's sound discretion.

*Jimenez v. Madison Area Technical College,* 321 F.3d 652, 657 (7th Cir. 2003). As to the frivolousness of the appeal, the court observed Attorney Nunnery cited to the wrong legal standard and devoted only one page of his appellate brief to a legal argument. *Id.* at 658.

¶ 37. The referee found that the federal district court's 2001 order dismissing E.J.'s claims directed Attorney Nunnery to pay a portion of the defendants' attorney fees of $16,473 as an additional sanction, and this monetary sanction was issued only against Attorney Nunnery. Nonetheless, Attorney Nunnery had not made such a payment. Based on these findings, the referee determined the OLR proved Attorney Nunnery failed to provide competent client representation, contrary to SCR 20:1.1.

¶ 38. The referee concluded:

> By failing to meaningfully inquire into the veracity of the suspicious e-mails and letters that his client claimed were sent by defendants in the [E.J.] case; by blindly relying on his client's unreasonable assurances that the documents were authentic, and that their extraordinary contents were actually reduced to writing by their alleged authors; by filing the second amended complaint, which contained material allegations based directly upon the questioned documents, after failing to investigate the authenticity of the documents; by essentially ignoring sworn statements of the purported authors that the documents were fabrications; by making conflicting statements to the District Court about the 'original' documents which prompted the court to question Nunnery's candor to-

> ward that tribunal; and by pursuing an appeal arguing the wrong legal standard, and presenting an appellate brief containing only one page of argument . . . .

Attorney Nunnery failed to provide competent representation to his client as charged in Count 10 of the OLR's complaint.

¶ 39. With respect to Count 11, the referee ruled that the OLR failed to carry its burden to prove Attorney Nunnery's subjective intent to assert a position or take an action on behalf of a client when he knew, or it was obvious, that the action would serve merely to harass or maliciously injure another. The referee found that circumstantial evidence bearing on Attorney Nunnery's intent was ambiguous. The referee said that opposing counsel's statements could be viewed as a fair warning or as an intimidation tactic. As a result, the referee declined to draw any inference that Attorney Nunnery had a bad motive or intent to harass or maliciously injure adverse parties, but instead that he made an error of judgment in utilizing the questioned documents.

¶ 40. The referee found true Attorney Nunnery's testimony that he had no intention to humiliate, embarrass, or harass anyone. The referee noted that the OLR failed to introduce any evidence of the questioned documents, affidavits, any pleadings in the E.J. case other than the second amended complaint, the so-called independent medical examination of E.J., nor the live testimony of any witness other than Attorney Nunnery. The referee determined: "The Rule 11 violation found in the federal court litigation was predicated on a different, and much fuller, evidentiary record; a lower burden of proof; and a different (objective vs. subjective) standard of evaluation of the Respondent's con-

duct." Accordingly, the referee concluded that the OLR did not establish a violation of SCR 20:3.1(a)(3), as charged in Count 11.

¶ 41. Next, Counts 12 and 13 involved client Y.P. and her family. In December 1997 Y.P. and her ex-husband contacted Attorney Nunnery to determine whether to pursue an action against the school their son, E.P., attended for failing to protect him from harassment after he was bullied by several students resulting in being stabbed in the chest with a pencil.

¶ 42. Attorney Nunnery sent these clients a letter regarding multiple potential claims against the school district and agreeing to represent E.P.'s interests on a contingency basis, plus a $3000 retainer for up-front costs. His clients sent Attorney Nunnery a $3000 retainer check. Attorney Nunnery sent a letter to the school district's superintendent regarding his clients' claims. On December 30, 1997, the school district's insurer requested medical records and reports supporting E.P.'s claims. Attorney Nunnery sent a copy of this letter to his clients on January 5, 1998. This was Attorney Nunnery's last communication with Y.P.'s ex-husband.

¶ 43. Between February 9, 1998, and January 26, 1999, Attorney Nunnery performed various legal services with respect to Y.P. and her family's claims. In February 1999 he sent a draft complaint to Y.P. for her review setting forth one claim against the school district under 42 U.S.C. § 1983 (1998) for denying E.P. his property interest in a public education without due process of law. In July 1999 Y.P. inquired on the status of her case, but Attorney Nunnery did not respond. She wrote again on July 26, August 18, and August 30; Attorney Nunnery did not respond to her questions. In September 1999 Attorney Nunnery mailed the com-

plaint and filing fee to the U.S. District Court, copying Y.P. On January 5, 2000, Y.P. wrote to Attorney Nunnery requesting information and explaining she had heard nothing since September. Attorney Nunnery did not respond, and Y.P. re-sent the letter on January 18, January 24, and February 1, 2000. Attorney Nunnery did not respond until after her February 1, 2000, letter.

¶ 44. On February 8, 2000, the federal court ordered Attorney Nunnery to serve the complaint and file proof of service within 21 days. Attorney Nunnery did not serve the complaint within 21 days and the case was dismissed on March 7, 2000. Attorney Nunnery failed to inform Y.P. of the dismissal.

¶ 45. In April 2000 Y.P. wrote to Attorney Nunnery indicating she had not heard from him since February 1; she offered to retain another attorney; she asked for a refund of her $3000 retainer and asked if there was nothing that could be done legally to let her know. Attorney Nunnery telephoned in response to this letter. Between June 2000 to July 2000, Y.P. sent Attorney Nunnery four letters requesting information. He did not respond.

¶ 46. On July 13, 2000, Attorney Nunnery filed a complaint with the U.S. District Court for the Eastern District of Wisconsin which named Y.P. as the plaintiff, but her former husband was not listed as a party. Between July 14 and July 18, 2000, Attorney Nunnery attempted to meet with Y.P., but due to short notice she was unable to take off work. On August 1, 2000, Y.P. sent Attorney Nunnery a letter requesting information, but he did not immediately respond. However, between August and November 2000 Attorney Nunnery sent information to Y.P.

¶ 47. On December 1, 2000, Attorney Nunnery sent Y.P. deposition notices. The morning of the deposi-

308

tions, he met with E.P., Y.P., and her former husband and provided brief but helpful instructions. The referee found there was no showing that the brevity of the instructions prejudiced the claims, but Y.P. was understandably disappointed with the lack of Attorney Nunnery's efforts. Following the depositions, the school district offered to settle for $10,000. Attorney Nunnery recommended acceptance of the offer, but Y.P. rejected it.

¶ 48. In March 2001 the school district moved for summary judgment. The U.S. District Court granted the school district's summary judgment motion in June 2001. Attorney Nunnery sent a copy of the decision with a brief cover letter stating the lawsuit had been dismissed and to call at her convenience. Y.P. refused this request to call him.

¶ 49. In July 2001 the federal court entered a judgment against Y.P. for costs in the sum of $1312.42 and notice of entry was sent to all counsel. Attorney Nunnery did not inform Y.P. of the judgment. The judgment constituted a lien against her real estate. In July 2003 Y.P. received a title report in connection with the sale of her residence and became aware for the first time of the judgment lien. In order to clear the lien and close the sale, she was put to significant inconvenience, additional expense, aggravation, and embarrassment.

¶ 50. The referee concluded that these facts demonstrated that Attorney Nunnery failed to act with reasonable diligence and promptness, contrary to SCR 20:1.3, as charged in Count 12. In addition, the referee concluded that by failing to respond to Y.P.'s numerous requests and by not keeping her informed, he failed to keep a client reasonably informed, contrary to SCR 20:1.4(a), as charged in Count 13.

¶ 51. The final disciplinary matter, Count 14, alleged that Attorney Nunnery failed to provide competent representation to client V.R., contrary to SCR 20:1.1. In February 2000 V.R., through a different attorney, sought judicial review of a decision to terminate his disability benefits. The case was brought before the U.S. District Court for the Eastern District of Wisconsin. On December 3, 2000, V.R. died and his attorney sent a letter informing the court of V.R.'s death. On December 20, 2000, the U.S. District Court ordered V.R.'s surviving spouse to obtain counsel and move to substitute parties on or before February 1, 2001.

¶ 52. On January 26, 2001, Attorney Nunnery filed a notice of appearance on behalf of "the Plaintiff." He did not move for substitution of parties or identify anyone other than the deceased as his client. A second scheduling order extended the deadline for filing substitution of parties to April 1, 2001. Attorney Nunnery did not move for substitution of parties within that time nor move for an extension of time to do so.

¶ 53. On June 18, 2001, the defendant filed a suggestion of death on the record, pursuant to FED. R. CIV. P. 25(a)(1), but did not file a certificate of service as required. On August 3, 2001, the defendant filed a motion for partial summary judgment. Attorney Nunnery responded, acknowledging the suggestion of death, but not admitting service; he did not move to substitute parties. He later signed an affidavit averring he was not served with the suggestion of death.

¶ 54. On October 12, 2001, Attorney Nunnery moved for leave to file a substitution of parties, claiming he had not been served with the suggestion of death and that the procedural time limits to do so were inapplicable. The court rejected these arguments and

denied his motion. Attorney Nunnery appealed, representing himself as counsel for the decedent, V.R. The U.S. Court of Appeals for the Seventh Circuit affirmed the district court ruling, but it did not, however, rule that his arguments were frivolous. The referee concluded that by failing to file a timely substitution of parties, Attorney Nunnery failed to provide competent representation, contrary to SCR 20:1.1.

¶ 55. Accordingly, the referee concluded the OLR established violations in Counts 1 through 10 and 12 through 14. It noted, however, the OLR had not established each of the particulars with respect to all of its allegations.

¶ 56. The referee concluded that a two-month suspension was appropriate to impress upon Attorney Nunnery the seriousness of his failures and warn other members of the bar. The referee stated that the OLR had not established Count 11, which he termed was the most serious count alleged. With respect to Count 10, the referee determined that "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners." The referee explained: "By making only a cursory and *pro forma* effort to validate the documents, after substantial doubt had been raised as to their authenticity, the Respondent shirked his duty of 'inquiry into an analysis of' both the factual and legal ramifications of their continued use." The referee further concluded that Attorney Nunnery should be ordered to pay full costs and his reinstatement be conditioned on proof that he has paid the sanction in the E.J. matter.

¶ 57. Attorney Nunnery advances numerous arguments to support his contention that the OLR did not

prove Count 10. He submits that the plain language of SCR 20:1.1 fails to impose a duty to discover client fraud or to protect clients from frauds they perpetrate on the court or on their attorney. He claims case law applies SCR 20:1.1 to an attorney's, not a client's, deficiencies. He argues the referee failed to recognize a client's obligation to tell the truth to the court as well as to his or her lawyer. He points out no client has the right to testify falsely.

¶ 58. Attorney Nunnery argues that absent extraordinary circumstances, knowledge that a client intends to testify falsely must be based on his or her expressed admission. He emphasizes that the Seventh Circuit Court of Appeals blamed E.J. and not him for the fabricated documents. He maintains that SCR 20:3.1 through 20:3.10 govern ethical duties. Attorney Nunnery points out the referee determined he did not violate SCR 20:3.1(a)(3), charged in Count 11. He notes the referee specifically found he had no intent to humiliate, harass, or embarrass anyone and it was only through a misapprehension of his duties under Rule 11 that he failed to address the questioned documents. He further argues the referee's determination as to Count 10 is tantamount to holding that a Rule 11 violation automatically violates SCR 20:1.1.

¶ 59. Attorney Nunnery argues that while judgment errors may be properly sanctioned under Rule 11, or Wis. Stat. 802.05, such errors should not be considered an ethical rule violation. Attorney Nunnery claims the referee's analysis essentially permits proof of a violation of SCR 20:1.1, without any proof of the knowledge requirements in SCR 20:3.1. He argues that ethical rules violations require a higher standard of proof, i.e., that the frivolous claim or defense must be knowingly advanced.

¶ 60. We are unpersuaded. The referee found misconduct charged in Count 10 not because Nunnery failed to discover his client's fraud, but because he failed to make any meaningful inquiry into the veracity of the suspicious documents. The comment to SCR 20:1.1 provides: "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem . . . ." We are satisfied the SCR 20:1.1 violation is amply supported by the referee's numerous specific findings, including the finding that the client's claimed reason for the lamination (to prevent theft) was absurd, and that the documents were suspicious on their face. The U.S. District Court described the documents as obviously fraudulent and observed that any minimally competent lawyer would have subjected his client to rigorous questioning and demanded corroboration of details before proceeding.

¶ 61. We are not persuaded that Attorney Nunnery was, as he implies, merely a hapless victim of an unscrupulous client. It is the attorney's lack of preparation and inquiry that is a basis for the violation. *See In re Disciplinary Proceedings Against Fischer,* 176 Wis. 2d 145, 499 N.W.2d 677 (1993) (SCR 20:1.1 was violated by failing to examine files, seeking to discover basis or legal sufficiency of allegations of party on whose behalf one is signing documents.). Attorney Nunnery's arguments reflect a misunderstanding of the purpose of SCR 20:1.1.

¶ 62. Attorney Nunnery argues that SCR 20:1.1 does not apply because it is intended to protect clients only. We are satisfied that SCR 20:1.1 is intended to protect our system of justice as well as individual clients. The Preamble to SCR Chapter 20 describes a

313

lawyer's responsibilities and states that "[n]eglect of these responsibilities compromises the independence of the profession and the public interest which it serves." It adds: "Lawyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship to our legal system. The Rules of Professional Conduct, when properly applied, serve to define that relationship."

¶ 63. The Seventh Circuit Court of Appeals observed that Attorney Nunnery, along with his client, were responsible for abusing our justice system. *See Jimenez,* 321 F.3d at 657 ("[T]he filing of her baseless claim amounted to a veritable attack on our system of justice, . . . the only abuses ascertainable in this case were those committed by her counsel and [E.J.] herself."). This conclusion is consistent with the idea that SCR 20:1.1 serves to protect not only an individual client, but the system of justice as a whole. Accordingly, we reject Attorney Nunnery's arguments, including his suggestion that a client's misdeeds relieve an attorney of his obligations under SCR 20:1.1.

¶ 64. Next, Attorney Nunnery argues that the facts warrant only the imposition of a public reprimand. Attorney Nunnery points to his excellent reputation, full cooperation, lack of disciplinary history, and apology. He claims that a two-month suspension is not required to impress upon him the seriousness of the misconduct and he has paid a heavy price already. He recognizes he is responsible for the sanction in the E.J. matter and objects to its payment as a reinstatement condition. Attorney Nunnery also points out that the referee concluded that some of the violations caused no harm to the client, such as the J.A. matter. He argues that he admitted many of the complaint's allegations,

and that many of the violations were years old and relatively minor. He submits he accepts responsibility for his misconduct.

¶ 65. Attorney Nunnery further objects to being responsible for full costs of the proceeding. He argues the OLR failed to prove Count 11, the most serious allegation. He asserts many counts were admitted and in any event, the attorney fees should be based on the actual costs, rather than the $70 per hour rate the OLR seeks.[12]

¶ 66. We reject Attorney Nunnery's arguments. We do not accord the referee's recommendation as to appropriate discipline great weight or consider it conclusive. *See In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. This court is entitled to impose discipline more or less severe than recommended. *Id.* Here, in light of the circumstances of this proceeding, however, we are satisfied that the referee's recommendation is appropriate.

¶ 67. We are mindful of Attorney Nunnery's cooperation, previous lack of discipline, good reputation, and apology. We are not, however, persuaded by his argument that a lack of harm resulted. Given the number and seriousness of the infractions, as well as

---

[12] The OLR filed a statement asserting costs of $8219.97 as of September 18, 2006. Attorney Nunnery objects, arguing that the OLR failed to prove Count 11, the most serious allegation. He asserts many counts were admitted and that attorney fees should not be assessed at the approved rate of $70 per hour, but should be based on the actual in-house costs the OLR incurred. He further objects to certain witness fees and costs. We conclude the statement of costs is reasonable and reject his argument that full costs should not be assessed.

the need to deter other attorneys from similar misconduct, a two-month suspension is appropriate. We conclude that the seriousness of Attorney Nunnery's misconduct warrants the imposition of a two-month license suspension. We further conclude that full costs are to be assessed as recommended by the referee. In addition, reinstatement shall be conditioned on payment of the sanctions imposed in the E.J. matter.

¶ 68. IT IS ORDERED the license of Attorney Willie J. Nunnery to practice law in Wisconsin is suspended for two months commencing February 6, 2007, as discipline for his professional misconduct.

¶ 69. IT IS FURTHER ORDERED that within 60 days of the date of this order, Willie J. Nunnery pay to the Office of Lawyer Regulation all the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Willie J. Nunnery to practice in Wisconsin shall remain suspended until further order of this court.

¶ 70. IT IS FURTHER ORDERED that reinstatement is conditioned upon payment of the sanctions imposed in the E.J. matter. If the sanctions are not paid and absent a showing to this court of his inability to pay, the license of Willie J. Nunnery to practice in Wisconsin shall remain suspended until further order of this court.

¶ 71. IT IS FURTHER ORDERED that Willie J. Nunnery comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 72. LOUIS B. BUTLER, J. took no part.