IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Willie J. NUNNERY, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Willie J. NUNNERY, Respondent-Appellant.

Supreme Court

*No. 2009AP773–D.—Decided June 7, 2011.*

2011 WI 39

(Also reported in 798 N.W.2d 239.)

For the respondent-appellant there was a brief by *Attorney Willie J. Nunnery,* Madison.

For the complainant-respondent there was a brief by *Attorney Julie M. Spoke* and *the Office of Lawyer Regulation,* Madison.

¶ 1. PER CURIAM. We review Referee Stanley F. Hack's report recommending that Attorney Willie J. Nunnery's license to practice law in Wisconsin be revoked and that he be required to pay the costs of this disciplinary proceeding which total $18,461.98 as of October 6, 2010. After fully reviewing the matter we agree that Attorney Nunnery committed numerous acts of professional misconduct as alleged in the 17 counts of the disciplinary complaint filed by the Office of Lawyer

Regulation (OLR). We agree that revocation of his license to practice law is appropriate. We further order that he pay the full costs of this disciplinary proceeding.

¶ 2. Attorney Nunnery was admitted to the practice of law in Wisconsin in January 1976. He practices in Madison, Wisconsin. He has a lengthy disciplinary history. On January 4, 2007, this court suspended Attorney Nunnery's license for two months, effective February 6, 2007, for misconduct consisting of one count of failing to reduce a contingency agreement to writing; one count of failing to hold a client's property in trust; two counts of failing to act with reasonable diligence and promptness; three counts of failing to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information; two counts of failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; one count of knowingly advancing a claim that was unwarranted under existing law; and two counts of failing to provide competent representation to a client. *In re Disciplinary Proceedings Against Nunnery,* 2007 WI 1, 298 Wis. 2d 289, 725 N.W.2d 613.

¶ 3. On July 21, 2009, this court suspended Attorney Nunnery's license for three years for misconduct he committed in two separate disciplinary matters, effective August 24, 2009, as follows: six months in the first matter and two and one-half years in the second matter. In those matters Attorney Nunnery failed to communicate the basis or rate of his fee; failed to keep a client reasonably informed about the status of a matter and promptly comply with requests for information; failed to explain a matter to the extent necessary to permit the client to make informed decisions; failed to cooperate with OLR's investigation; provided finan-

7

cial assistance to a client in connection with pending litigation; failed to abide by the client's decisions concerning the objectives of representation; failed to diligently pursue a client's matter; knowingly made a false statement to a tribunal; engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation; failed to provide competent representation to a client; failed, upon termination of representation, to take steps to the extent reasonably practicable to protect a client's interests; failed to maintain complete trust account records for at least six years after termination of representation; failed to maintain individual client ledgers; and knowingly disobeyed an obligation under the rules of a tribunal. *In re Disciplinary Proceedings Against Nunnery,* 2009 WI 89, 320 Wis. 2d 422, 769 N.W.2d 858.

¶ 4. The OLR filed a complaint on March 25, 2009, alleging 17 counts of professional misconduct committed in three client matters. There were numerous pretrial and scheduling conferences. Attorney Nunnery requested an adjournment because he wanted to consult with counsel on his defense. The request was granted. The proceedings before the referee were completed on July 14, 2010. At the request of the referee the parties filed briefs. Following the filing of the referee's report and recommendation Attorney Nunnery sought to appeal but his appeal was dismissed by this court as untimely. The court, on its own motion, directed the parties to file briefs pursuant to SCR 22.17(2).[1] The

---

[1] The court denies Attorney Nunnery's request for permission to make an oral statement to the court but permitted him to submit briefs despite the untimeliness of his appeal. SCR 22.17(2) states:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional

matter is now before this court for consideration. The primary issues involve whether the referee erred in permitting certain witness testimony to be taken by telephone over Attorney Nunnery's objection and whether the sanction of revocation is appropriate.

¶ 5. When reviewing a report and recommendation in an attorney disciplinary proceeding, we affirm a referee's findings of fact unless they are found to be clearly erroneous. *In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law, however, on a de novo basis. *Id.* We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

## I. D.B. MATTER

¶ 6. On February 1, 2005, D.F. and M.F. hired Attorney Nunnery to represent their son, D.B., an insulin dependent diabetic, in connection with a possible claim for inadequate medical care against a correctional institution in Georgia where D.B. was incarcerated. Attorney Nunnery agreed to accept the representation for a $3,500 fee, out-of-pocket costs, plus a 40 percent contingent fee. The fee agreement provided that, "The scope of [Attorney Nunnery's] representation will cover this matter through the United States Federal District Court OR a state circuit

findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

9

court . . . ." Attorney Nunnery did not inform his clients they would have to pay any additional money upon the filing of a federal lawsuit. The clients would not have hired Attorney Nunnery if they had known it would cost them more money. After performing a case evaluation, Attorney Nunnery informed the clients he believed D.B. had a good case. Attorney Nunnery obtained D.B.'s medical records at a cost of $117.21. Attorney Nunnery then informed the clients that continued representation would require an additional $15,000. Attorney Nunnery informed D.B.'s mother that if she did not give him the $15,000 he could no longer represent D.B. Attorney Nunnery also informed her that the statute of limitations would expire on November 30, 2005.

¶ 7. The clients did not have the money to pay Attorney Nunnery the $15,000. By correspondence dated August 18, 2005, Attorney Nunnery advised D.B. his parents had made "no arrangements" for Attorney Nunnery to continue representing D.B. and he would no longer represent D.B. Attorney Nunnery incorrectly informed D.B. that his claims were subject to a one-year statute of limitations and must be filed by November 30, 2005. In fact, D.B.'s federal claims were subject to a two-year statute of limitations that expired in early January 2007.

¶ 8. Other than meeting with D.B., obtaining a police report, obtaining medical records, and communicating with D.B.'s criminal attorney, the clients were not aware of any other work Attorney Nunnery had performed on D.B.'s case. The clients asked for their money back, but Attorney Nunnery did not return any of the retainer and did not provide the clients with an itemization of the work he performed on D.B.'s case.

10

¶ 9. On August 22, 2007, OLR requested information and documentation relating to this matter. Attorney Nunnery did not respond. On September 21, 2007, OLR again wrote to Attorney Nunnery. Attorney Nunnery provided a belated and inadequate handwritten response. On October 9, 2007, OLR wrote to Attorney Nunnery requesting additional information but Attorney Nunnery did not respond. Attorney Nunnery eventually denied these charges in his answer to the OLR's complaint.

¶ 10. Ultimately, the referee concluded and we agree that by failing to clearly and accurately explain to these clients the limited scope of his representation offered in exchange for the $3,500 payment, and that additional fees would be required if he agreed to represent D.B. in a federal lawsuit, Attorney Nunnery violated former SCR 20:1.5(b)[2] (Count 1). In addition, by failing to correctly identify the statute of limitations applicable to D.B.'s claims, Attorney Nunnery violated SCR 20:1.1[3]

---

[2] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007).

Former SCR 20:1.5(b) (effective through June 30, 2007) provided as follows: "When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

[3] SCR 20:1.1 states that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

(Count 2). By failing to timely provide OLR with a written response containing all of the information requested in OLR's letters, Attorney Nunnery violated SCR 22.03(2)[4] made actionable by SCR 20:8.4(h)[5] (Count 3).

¶ 11. On appeal, Attorney Nunnery asserts the referee erred by allowing the telephonic testimony of B.M. and D.F. and that this error compromised his constitutional rights. We disagree. A referee's decision to permit telephonic testimony is a discretionary determination that will be overturned only if the referee erroneously exercised his discretion. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). Wisconsin Stat. § 807.13(2)(c) (2009–10) provides that the referee may permit telephonic testimony when the proponent shows good cause to the court. The referee may consider the following factors:

> 1. Whether any undue surprise or prejudice would result;

---

[4] SCR 22.03(2) states:

> Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[5] SCR 20:8.4(h) (effective as of July 1, 2007) provides it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

12

2. Whether the proponent has been unable, after due diligence, to procure the physical presence of the witness;

3. The convenience of the parties and the proposed witness, and the cost of producing the witness in relation to the importance of the offered testimony;

4. Whether the procedure would allow full effective cross-examination, especially where availability to counsel of documents and exhibits available to the witness would affect such cross-examination;

5. The importance of presenting the testimony of witnesses in open court, where the finder of fact may observe the demeanor of the witness, and where the solemnity of the surroundings will impress upon the witness the duty to testify truthfully;

6. Whether the quality of the communication is sufficient to understand the offered testimony;

7. Whether a physical liberty interest is at stake in the proceeding; and

8. Such other factors as the court may, in each individual case, determine to be relevant.

Wis. Stat. § 807.13(2)(c). Here, the record reflects that the OLR moved to permit the telephonic testimony because the individuals lived in Killeen, Texas, and Metairie, Louisiana. The OLR averred it was unable to obtain the witness's testimony in person because of inconvenience to the witnesses and the significant costs of producing the witnesses in person at the hearing. Following a hearing on the matter the referee requested additional submissions from both parties. The OLR presented a letter addressing the referee's concerns, along with an affidavit from staff counsel regarding OLR's financial constraints related to the costs of travel, including airline, hotel rooms, and food, to bring

13

both witnesses to Madison for their testimony. Attorney Nunnery did not respond. The motion was brought well in advance of the June 7, 2010, trial so that it would not cause undue surprise or prejudice to Attorney Nunnery. Attorney Nunnery was allowed full cross-examination of the witnesses and the referee reserved the right to reconsider the issue if the telephonic testimony of the witness required a personal appearance. We conclude that the referee did not abuse his discretion in permitting telephonic testimony of these witnesses.

## II. G.G. MATTER

¶ 12. On August 15, 2002, G.G. hired Attorney Nunnery to represent him concerning his employment termination. G.G. paid Attorney Nunnery a $2,000 advance for fees and costs pursuant to a written fee agreement. Attorney Nunnery agreed to take G.G.'s case on a 40 percent contingent fee basis. Attorney Nunnery advised G.G. he would be able to get his job back along with seniority and back pay. Attorney Nunnery then failed to take any further action on G.G.'s case.

¶ 13. During 2003, 2004, and 2005, G.G. made repeated efforts to contact Attorney Nunnery regarding the status of his case. When G.G. did succeed in reaching Attorney Nunnery by telephone, Attorney Nunnery stated, "I'm still working on it." Between the spring of 2004 and summer of 2005, Attorney Nunnery gave G.G. money, totaling approximately $2,000 as "loans" that G.G. would have to repay when his case was settled. However, Attorney Nunnery did not give G.G. any written documentation regarding these loans. Attorney Nunnery never informed G.G. that he did not have a viable case or that Attorney Nunnery would not be filing a

14

complaint on his behalf. In December 2005 G.G. himself negotiated the return of his job, without seniority or back pay.

¶ 14. Attorney Nunnery then failed to adequately respond to multiple requests for information from the OLR. Attorney Nunnery eventually conceded he did not diligently represent G.G.

¶ 15. Ultimately, the referee concluded and we agree that by failing to diligently investigate or pursue G.G.'s claims against his former employer, Attorney Nunnery violated SCR 20:1.3[6] (Count 4); by failing to provide G.G. with accurate information regarding the status of his claims and whether Attorney Nunnery was taking any actions on G.G.'s behalf and causing or allowing G.G. to believe that Attorney Nunnery continued to pursue legal action on G.G. behalf, or that Attorney Nunnery intended to take any action on his behalf, Attorney Nunnery violated former SCR 20:1.4(a)[7] and SCR 20:8.4(c)[8] (Count 5). In addition, by loaning funds to G.G. during the course of the representation, without fully disclosing and transmitting in writing the terms of the loan, and without obtaining G.G.'s written consent to those terms, Attorney

---

[6] SCR 20:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[7] Former SCR 20:1.4(a) (effective through June 30, 2007), provided "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[8] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

Nunnery violated former SCR 20:1.8(a)[9] (Count 6); and by failing to timely provide OLR with a written response containing all of the information requested by the OLR, Attorney Nunnery violated SCR 22.03(2) and (6)[10] made actionable by SCR 20:8.4(h) (effective as of July 1, 2007) (Count 7).

### III. B.M. MATTER

¶ 16. B.M. was a library branch manager and supervisor for a public library in the City of Milwaukee from April 1980 through August 1998. She was injured at work in December 1996. B.M. hired Attorney Nunnery to represent her concerning claims arising out of a denial of duty disability retirement benefits and damages for disability discrimination by the City of Milwaukee and the Milwaukee Public Library System relating to her work injury. She paid him a $2,000 retainer and

---

[9] Former SCR 20:1.8(a) (effective through June 30, 2007), provided:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

[10] SCR 22.03(6) states:

In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

signed a fee agreement that provided for a 40 percent contingent fee. More specifically, B.M. sought duty disability compensation that provided 100 percent compensation under a retirement plan, whereas ordinary disability benefits only provided 50 percent of compensation during retirement. B.M. filed an application seeking both benefits. The greater benefits were denied and Attorney Nunnery stepped in and filed an appropriate request for an appeal. Attorney Nunnery then wholly failed to pursue the appeal and the file was eventually closed.

¶ 17. B.M. however believed Attorney Nunnery was pursuing the greater benefit and also believed Attorney Nunnery had filed a federal action seeking damages for discrimination and denial of her duty disability benefits. Attorney Nunnery did inform B.M. that she had a difficult case, but he did not advise her that her claims lacked merit. Attorney Nunnery eventually did file a federal lawsuit, but he did not name all of the proper parties and failed to serve the complaint. The court dismissed the complaint. B.M. did not learn that her federal lawsuit had been dismissed until after she filed the grievance against Attorney Nunnery. In addition, various applicable statutes of limitation expired while Attorney Nunnery was supposed to be representing B.M.

¶ 18. Attorney Nunnery also loaned B.M. $1,500 which he told B.M. would be subtracted off the top of her recovery in the lawsuit against the City of Milwaukee. Attorney Nunnery never provided B.M. with any written documentation regarding this loan.

¶ 19. Throughout the representation Attorney Nunnery failed to communicate with B.M. or failed to respond to B.M.'s efforts to communicate with him. Attorney Nunnery then failed to cooperate with OLR on its investigation and failed to provide information requested. Attorney Nunnery initially denied the charges

relating to B.M., but later stipulated to Counts 13 through 15 of the complaint.

¶ 20. Based on the record evidence the referee concluded and we agree that Attorney Nunnery committed the ten counts of misconduct alleged pertaining to his representation of B.M., as follows:

- By failing to diligently and promptly pursue B.M.'s claims against her former employer for failure to accommodate her disability prior to her August 1998 retirement and her appeal of the City of Milwaukee's Employes' Retirement System's (ERS) denial of her application for duty disability benefits, Attorney Nunnery violated SCR 20:1.3 (Count 8).

- By failing to advise B.M. of the content of the city attorney's August 23, 2000, letter or to provide her with a copy of the same; failing, prior to November 2004, to advise B.M. that he had not yet filed a lawsuit against her former employer; failing to advise her of the court's March 24, 2005, order in her federal claim, or to provide her with a copy of the order; failing to inform B.M. that on April 29, 2005, the court dismissed her federal complaint, or to provide her with a copy of the dismissal order; failing to inform her that the statute of limitations had expired with regard to all claims she may have had against her former employer for disability discrimination and the employer's alleged failure to accommodate her disability; and failing to respond to B.M.'s reasonable requests for information, Attorney Nunnery violated former SCR 20:1.4(a) (effective through June 30, 2007) (Count 9).

- By failing to name the City of Milwaukee's ERS or its Pension and Annuity Board as a defendant in B.M.'s federal case, Attorney Nunnery violated SCR 20:1.1 (Count 10).

18

- By allowing B.M.'s federal complaint to be dismissed without first discussing the dismissal with B.M. and allowing B.M. to decide whether to pursue the case; failing to seek relief in B.M.'s federal complaint in the form of duty disability benefits or its equivalent; and asking the court, in B.M.'s federal complaint, to reinstate her employment when she had no desire to return to employment, and reinstatement might have affected her eligibility for social security disability benefits and ordinary disability benefits, Attorney Nunnery violated former SCR 20:1.2(a)[11] (Count 11).

- By failing, prior to the expiration of the statute of limitations on each of B.M.'s possible claims, to advise her of the date on which the statute of limitations would expire and that Attorney Nunnery did not intend to take any action on her behalf; and failing to advise B.M. that he intended to abandon her appeal of the denial of her duty disability benefits application, Attorney Nunnery violated former SCR 20:1.4(b)[12] (Count 12).

- By failing to timely advise B.M. that Attorney Nunnery considered his representation of B.M. in each of the matters he undertook on her behalf to have ended and, regarding each such matter, to advise B.M. that he did not intend to take any further action on her behalf, Attorney Nunnery violated former and current SCR 20:1.16(d)[13] (Count 13).

---

[11] Former SCR 20:1.2(a) (effective through June 30, 2007) stated, in pertinent part, that "[a] lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued."

[12] Former SCR 20:1.4(b) (effective through June 30, 2007) stated, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[13] Former SCR 20:1.16(d) (effective through June 30, 2007) provided:

19

- By causing or allowing B.M. to believe that Attorney Nunnery continued to pursue legal action on her behalf after April 29, 2005, Attorney Nunnery violated SCR 20:8.4(c) (Count 14).

- By loaning funds to B.M. during the course of the representation, without fully disclosing and transmitting in writing the terms of the loan, and without obtaining B.M.'s consent to those terms in writing, Attorney Nunnery violated former SCR 20:1.8(a) (effective through June 30, 2007) (Count 15).

- By advising OLR in his July 10, 2007, letter and in his testimony on August 7, 2007, that he did not file a lawsuit against B.M.'s former employer prior to November 2004 because the claims had not yet ripened, when any claims had ripened no later than June 24, 2000; and by advising OLR in his July 10, 2007, letter that after he had filed the federal case he advised B.M. of "complications of maintaining the lawsuit," Attorney Nunnery violated SCR 22.03(6) via SCR 20:8.4(f)[14] (Count 16).

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

Current SCR 20:1.16(d) (effective July 1, 2007) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[14] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme

- By failing to timely provide OLR with a written response containing all of the records and information requested in OLR's letters to Attorney Nunnery dated May 14 and June 13, 2007, Attorney Nunnery violated SCR 22.03(2) and (6) via SCR 20:8.4(f) (Count 17).

¶ 21. Upon consideration of the entire record we accept the referee's findings of fact and agree that the facts set forth in the complaint support the legal conclusion that Attorney Nunnery engaged in 17 counts of professional misconduct. We adopt the referee's report and his recommendation for revocation and imposition of costs.[15]

¶ 22. Attorney Nunnery's professional misconduct requires the severest level of discipline that we impose, namely, the revocation of his license to practice law in Wisconsin. Attorney Nunnery has repeatedly failed to diligently pursue his clients' cases, failed to keep clients informed, and ignored their repeated requests for information on their cases. Attorney Nunnery's misconduct is aggravated by a number of factors. He has previously been disciplined. He has an established pattern of allowing his clients to believe he was pursuing claims on their behalf, when, in fact, he failed to work on their claims. He has committed multiple violations of supreme court rules and has repeatedly failed to cooperate with OLR in its investigations.

¶ 23. In considering the appropriate sanction we are mindful that we follow a practice of applying progressive penalties in successive misconduct cases. In

court order or supreme court decision regulating the conduct of lawyers; . . . ."

[15] In response to this court's order dated April 13, 2011, the OLR confirmed that it does not seek restitution in this matter.

Attorney Nunnery's most recent disciplinary matters the OLR sought revocation but Attorney Nunnery obtained a lengthy suspension instead. No additional leniency is warranted now. Revocation is appropriate and we deny Attorney Nunnery's request that we impose that revocation retroactive to an earlier date. We further determine that Attorney Nunnery should be required to pay the full costs of this matter. SCR 22.24(1m).

¶ 24. IT IS ORDERED that the license of Willie B. Nunnery to practice law in Wisconsin is revoked, effective as of the date of this order.

¶ 25. IT IS FURTHER ORDERED that within 180 days of the date of this order, Willie B. Nunnery shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 26. IT IS FURTHER ORDERED that to the extent he has not already done so, Willie B. Nunnery shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶ 27. DAVID T. PROSSER, J., did not participate.